THOMPSON and Others *against* GARWOOD and Another.

IN EQUITY.

1. Where a general power of appointment is given and executed, the intention of the party executing the power is to be sought only in the instrument by which the appointment is made; and the construction of that instrument cannot be affected by any other clauses in the instrument by which the power was created.

2. A. devised certain real estate to trustees in fee, in trust for the separate use of her niece H. F., for life, with remainder to her child or children surviving her; but if H. F. should die without leaving a child or children, &c., surviving her, then the testator devised the estate to such person and persons, and for such estate, &c., and in such manner, &c., as she, the said H. F., by her last will, &c., should nominate and appoint; and for want of such appointment, the testator devised the estate to R. K. F. in fee. H. F. married after the death of the testator, but had no issue, and made a will, by which she devised to her executors the real estate which, by the will of A. was made subject to her appointment, to hold the same, in trust, to permit her brother, R. K. F. to receive the rents, &c., during life, and at and from his decease to convey the same to *the children* of the said R. K. F., their heirs and assigns forever, in equal proportions." At the date of the will, and at the death of H. F., R. K. F. had two children, who died in 1835, unmarried and without issue, leaving their father and mother surviving: *Held,* that the limitation of the remainder was not confined to the children of R. K. F. living at the date of the will and the death of H. F., but extended to all who might come *in esse* to the time of the death of R. K. F., and consequently, that R. K. F. was not entitled to call for a conveyance of the legal estate from the trustees.

THIS case came before the Court on a bill or petition filed by John Thompson, trustee, and Robert Knox and Sarah his wife, against Richard Garwood and Benjamin Jones, Junior.

The bill set forth, that on the 13th day of May, A. D. 1820, Henrietta, widow of David Ware, deceased, was lawfully seized in her demesne as of fee of and in one equal undivided moiety or half part, the whole into two equal parts to be divided, of all that messuage or tenement and lot or piece of ground thereto belonging, marked in a plan annexed to a certain return of partition "Rebecca Dennis," situate on the west side of Swanson street, in the district of Southwark, in the county of Philadelphia; beginning at a stake on the said Swanson street, and extending thence by the said street, south seven degrees and a half, west sixty-one feet or thereabouts to a stake; thence by ground formerly of Arthur Donnaldson, afterwards of Joseph Swift, north seventy-eight degrees, west about two hundred and forty-five feet, *[288] and north sixty-two degrees five minutes, west *fifty-eight feet six inches, or thereabouts, to a stake on the

(Thompson *v.* Garwood.)

east side of Church street; thence by said Church street, north eleven degrees and a half, east sixty-two feet one inch to another stake; thence by ground allotted to David Ware and Henrietta his wife, south sixty-two degrees, east sixty-three feet seven inches, and south seventy-eight degrees and forty minutes, east one hundred and six feet three inches to a stake; thence by ground left open for an alley to the landing place, southward five feet, south seventy-eight degrees forty minutes, east one hundred and twenty feet to a stake at the northeast corner of said messuage; and thence by the said alley, the same course nine feet eight inches to the beginning; with the easements, hereditaments and appurtenances thereto belonging; and being so thereof seized, did on the day aforesaid make her last will and testament in writing of that date, duly executed and since her death proved, and now remaining of record in the register's office at Philadelphia, whereby she did devise the same to John Dennis and James Josiah, their heirs and assigns, *in trust*, to make leases thereof from time to time during the natural life of her niece, Hannah C. Fisher, and to recover and receive the rents, issues and profits thereof, and pay over the same when and as received, to her said niece Hannah C. Fisher, for her own separate use and support in such way and manner; and so that the same and every part thereof should not be in the power or subject to the debts, control, or engagements of any husband she might marry, and for which her own receipts under her own hand, notwithstanding any coverture should be deemed sufficient in the law; and from and after her decease, then to hold all and singular the said trust estate with the appurtenances to and for the only proper use and behoof of all and every the child or children of the said Hannah, her surviving, his, her, or their heirs and assigns forever; if more than one, as tenants in common, and not as joint tenants, but if either or any of the children of the said Hannah should be then deceased, and leaving a child or children living, such grandchild or grandchildren of the said Hannah should have and be entitled in fee simple to such part, share and proportion of the said trust estate, as his, her, or their deceased parent or parents would have been entitled to had such parent or parents then been living. *Provided*, however, that if her said niece, Hannah Fisher, should depart this life not leaving a child or children, grandchild or grandchildren, her surviving, or leaving a child or children, grandchild or grandchildren, living, and they should all die in their minority, and without issue, then and in such case, all the trust estate above described, should go, and the said testatrix did give and devise the same to such person and persons, and for such estate and estates, and in such manner and form as she, the said Hannah C. Fisher, by her last will and testament, in writing

(Thompson *v.* Garwood.)

or any writing under her own hand and seal, attested by two or more *credible witnesses by her intended, as and for her last will and testament, notwithstanding any coverture, or whether she should be covert or sole, should nominate, direct and appoint, and for want of such appointment the same should go, and she did give the same to her nephew, the said petitioner, Robert Knox Fisher, brother of the said Hannah, and to his heirs and assigns forever, in absolute fee simple. [*289]

The complainants annexed a copy of the will, and averred, that at the making thereof, and at the death of said testatrix, the petitioner, Robert K. Fisher and his brother John Fisher, devisees, therein named, were both bachelors; the marriage of each of them having taken place since her death.

The bill proceeded to set forth, that on or about the 4th day of June, in the said year, the testatrix died seized, as aforesaid, of and in the said premises without having in any wise altered or revoked her said last will and testament. And after her death, the said Hannah C. Fisher intermarried with Joseph S. Snowden, and afterwards, on the 9th of July, A. D. 1833, died without leaving any child, grandchild, or issue of any sort living, having first, on the 3rd day of August, A. D. 1832, by virtue and in execution of the power and authority given to her in and by the said last will and testament of Henrietta Ware, deceased, made her, the said Hannah C. Snowden's, last will and testament in writing, bearing date the day and year last aforesaid, not afterwards altered or revoked by her, and after her death duly proved, and now remaining of record in the said register's office at Philadelphia, wherein it was and is contained, as follows: "Second, I give and devise unto my said executors, their heirs and assigns forever, the undivided moiety or half part of all that house and lot of ground thereto belonging, situate on the west side of Swanson street, in the district aforesaid, which said moiety of the said house and lot is, by the will of Henrietta Ware, made subject to my direction and appointment: to have and to hold the same in trust, to permit and suffer my brother, Robert Knox Fisher, to receive and have for his own use all the clear rent income and product thereof, for and during the term of his natural life; and at, and from his decease to convey the same to the children of the said Robert Knox Fisher, their heirs and assigns forever, in equal shares and proportions."

"Fifth, I give and bequeath to my executors, hereinafter named, and to each of them, the sum of four hundred dollars; the payment of which I charge upon the estate, which, by the said will of Henrietta Ware, is made subject to my direction and appointment, and which I direct and appoint to be paid out of

(Thompson *v.* Garwood.)

the income or product of the said estate, before any other disposition thereof.'

"And I do direct and appoint, that the trustees under the will of *Henrietta Ware, convey the estate holden by them in trust for such persons, and for such uses as I shall [*290] nominate, direct and appoint, agreeable to the nomination, direction and appointment thereof, made by this my will.

"Lastly, I do nominate and appoint Richard Garwood and Benjamin Jones, Jr., to be the executors of this my will."

The complainants annexed a copy of this will, and averred, that, at the making of the said will, and death of the testatrix, Hannah C. Snowden, her sister Mary Fuit, therein named, had been left a widow, and had no other issue than her daughter Patsey Ann, therein named; that at the making of the said will, the said testatrix's brother, John Fisher, therein named, had issue one child born, and another *in ventre sa mere*, which said child, then *in ventre sa mere*, was born on the 6th of November, 1832, and died on the 4th of July, 1833, and he has since had another child, born after the death of the said testatrix; that at the time of making the said will, and of the testatrix's death, there were living four children of her deceased sister, Elizabeth Hill; and that, at the time of making her will and of her death, the petitioner, Robert Knox Fisher, had issue two children, who are since deceased, as is hereinafter more particularly stated.

That John Dennis and James Josiah, the said trustees, named in the will of Henrietta Ware, deceased, both died before the said Hannah C. Snowden, who, during her lifetime, and after their decease, at a Supreme Court for the said district, held at Philadelphia, on the 30th day of March, A. D. 1832, presented her petition on oath, setting forth the said devise in the will of Henrietta Ware, that the said John Dennis and James Josiah were both deceased, and that there was no suitable person to execute the said trust, and praying that the Court would appoint some suitable and proper person or persons to be trustees in their place, &c.   Whereupon this Court appointed to be trustees in the place of the said deceased trustees, the same Richard Garwood and Benjamin Jones, Jr., named as executors and devisees in trust as aforesaid, in the will of the said Hannah C. Snowden: that they thereupon accepted the said trust under the will of Henrietta Ware, and after the death of the said Hannah C. Snowden were duly qualified as executors of her will, and accepted and entered upon the execution of the trust thereby in them vested.

That at the time of the making of the said will of the said Hannah C. Snowden, and at the time of her death, the said Rob-

(Thompson *v.* Garwood.)

ert Knox Fisher had issue only two children, a daughter, named Anne Frances, and a son named Robert, and has not since had any other child or children, or issue; and the said only two children of the said Robert Knox Fisher have since both [*291] of them died *intestate, unmarried and without issue, the said Robert having so died on the 5th day of July, 1835, aged three years, seven months, and ten days, and the survivor, Anne Frances, having so died on the 10th of the same month of July, 1825, aged seven years, one month and ten days. And the said Robert Knox Fisher having no other issue living at the time of their decease, the equitable remainder in fee simple theretofore vested in his said children, did, according to the form and effect of the statute of this commonwealth in that behalf provided, descend to him. And upon the death of the survivor of the said children, he became himself tenant in fee simple of the said remainder, in and with which his life estate did thereupon become united, so that he became and was, then and thenceforth, sole equitable tenant in fee simple in possession of and in the aforesaid moiety or half part of the said premises; and being so thereof seized, and thereto entitled in fee simple in possession, the said Robert Knox Fisher and Sarah his wife, on the 10th day of November, 1835, by indenture of bargain and sale, made and executed by and between them the said Robert Knox Fisher and Sarah his wife, of the one part, and the said John Thompson of the other part, and recorded in the proper office at Philadelphia, on the 11th of November, A. D. 1835, did convey all that the aforesaid moiety or half part of and in the said premises, with the appurtenances, to the said John Thompson and his heirs, "*In trust* during the continuance of the trusts thereinafter declared, with or without judicial proceedings, to obtain the conveyance to the said party of the second part, and his heirs, of the outstanding legal title of and in the said premises;" and upon sundry other uses and trusts therein expressed and declared, for the benefit of the said Robert Knox Fisher and Sarah his wife; as will, on reference thereto at large, appear. That since the creation of the said last-mentioned trust, the said John Thompson, trustee, has duly paid and satisfied to the said Richard Garwood and Benjamin Jones, Jr., the proportion, chargeable upon the said premises, of the legacy of four hundred dollars to each of them, charged by the said will of Hannah C. Snowden upon the whole of the estates by her devised as aforesaid. That by reason of the determination of the equitable life estate of the said Robert Knox Fisher, on the descent to him of the equitable remainder in fee as aforesaid, he the said Robert Knox Fisher, at and before his said conveyance to the said John Thompson, had become, and was, the owner of an indefeasible equitable

(Thompson *v.* Garwood.)

estate in fee simple of and in the said moiety or half part of the said premises; and the trust thereof, theretofore vested in the said Richard Garwood and Benjamin Jones, Jr., was expired, and the said Robert Knox Fisher was entitled (and the said John Thompson is now entitled) to have the legal estate of and in the said premises conveyed to him by the said Richard and Benjamin; and the petitioners did for that purpose, in a friendly manner, apply to them to convey the same. That the said *Richard and Benjamin thereupon alleged that they were not certainly advised whether the said trust, so in them [*292] vested as aforesaid, was or was not expired, although if it have expired, they would have no objection to convey the said legal estate as is hereinafter prayed. And on the whole, they refused, and still refuse, to convey the said legal estate, except upon the compulsion of this Court, and under the sanction of a decision that the said trust, heretofore in them vested, is expired.

The bill then proceeded to aver, that the said John Thompson, by reason of the premises, has a full and perfect right to demand and insist upon a conveyance to him of the said legal estate. The bill concluded with praying the Court to make such order and direction in the premises as may compel the said Richard Garwood and Benjamin Jones, Jr., to convey the said legal estate to the said John Thompson and his heirs; and praying a subpœna and general relief, &c.

The will of Mrs. Ware, a copy of which was annexed to the bill is as follows:

" Be it remembered, that I, Henrietta Ware, of the district of Southwark, in the county of Philadelphia, widow, and relict of David Ware, late of the same place, deceased, being sick and weak in body, but of sound disposing mind, memory and understanding, considering the uncertainty of this life, and certainty of death, do make and publish my last will and testament, in manner and form following, to say:

First. I order and direct that all my just debts and funeral charges be paid as soon as possible after my decease.

Item. I do give to my executors, hereinafter named, an annuity or yearly sum of six hundred dollars, to be paid out of my personal estate, in trust, to be by them expended for and towards the maintenance and support of Ann Ware, the mother of my late husband David Ware, during her natural life, in such way and manner as my executors, in their discretion, may deem most conducive to her comfort. And I do hereby declare, that the said annuity of six hundred dollars is in lieu, satisfaction, and discharge of an annuity of two hundred dollars charged by the will of my said late husband on the three houses and lots in China street, hereinafter mentioned; and I do direct my executors, in

applying the said six hundred dollars per annum to the use of the said Ann Ware, to take her receipts from time to time in discharge of the annuity given her by my said husband as aforesaid, in order that the said houses and lots may be kept free and clear of the same annuity.

Item. I do give to John Devcreaux, son of Captain Devereaux, the *sum of one thousand dollars, as a testimony [*293] of my regard for him.    ($1000.)

Item. I do give to Maria Turnall, a black woman who now lives with me, one hundred dollars, for her kind attention to me during my illness.

Item. I do give to my cousin, John Dennis, of New Brunswick, in the state of New Jersey, during his natural life, all my mansion house, stables, out-buildings, garden, and ground thereto belonging, situate on the west side of Swanson street, between Christian and Prime streets, in Southwark aforesaid, bounded on the east by Swanson street; on the south by the tavern and lot in the tenure of John Miller; on the west by Church street, and on the north partly by the ground hereinafter devised to the said John Dennis and to Robert M'Mullen, in trust for John Fisher, for life, &c., and partly by the Swedes' burial ground, to hold to him, the said John Dennis, for and during all the term of his natural life, and no longer, and at and immediately after the decease of the said John Dennis, all my said mansion house, stables, out-buildings, ground, and gardens thereto belonging, with the appurtenances, shall go, and I do give and devise the same, to all and every the children of the said John Dennis, now born, or hereafter to be born, their respective heirs and assigns forever, share and share alike, as tenants in common, and not as joint tenants.

Item. I do give and devise to the said John Dennis, and my friend, Captain James Josiah, of Southwark aforesaid, and to their heirs and assigns, all my one full, equal, and undivided moiety or half part of the tavern, and lot of ground thereto belonging, situate on the west side of Swanson street, adjoining the south line of my mansion estate aforesaid, now in the tenure of John Miller, extending from Swanson to Church streets. Also, a lot of ground on the west side of Church street, and east side of Front street, directly west of the said tavern and lot formerly held by me and my sister, Ann Fisher, in fee, as tenants in common, and my said sister, by deed, conveyed her moiety of the same last mentioned lot to my late husband and myself, in fee, and which said last mentioned lot was formerly part of the lot attached to the said tavern.    Also, all that wharf and lot of ground lately purchased of the Miss Swifts, on the east side of Swanson street, directly opposite the said tavern and

(Thompson *v.* Garwood.)

lot, bounded west by Swanson street, south by ground of Josiah Haines, east by the Delaware river, and north by an alley. Also, the southernmost moiety or equal half part of my ground on the east side of Front street, and west side of Church street, (adjoining the north side of the first mentioned Front street lot) whereof my brother Barney Dennis died seized, and which I am entitled to as his heiress at law. Also, the nothernmost moiety or equal half part of a lot of ground on the east side of Front street, in the Northern Liberties and county of Philadelphia, and extending into the river Delaware, now in the tenure of *Samuel Medara, and the northernmost moiety or equal half part of one other lot on the east side of Front [*294] street, in the Northern Liberties aforesaid, and extending into the river Delaware, now in the tenure of —— Wallace, which said last two mentioned lots I am entitled to as heiress at law to my said brother, Barney Dennis, deceased, together with the appurtenances, to hold the same to them the said John Dennis and James Josiah, their heirs and assigns forever, in trust, nevertheless, to make leases thereof from time to time, during the natural life of my niece, Hannah C. Fisher, and to recover and receive the rents, issues, and profits thereof, and pay over the same when and as received, to my said niece, Hannah C. Fisher, for her own separate use and support, in such way and manner, and so that the same and every part thereof shall not be in the power or subject to the debts, control, or engagements of any husband she may marry, and for which her own receipt, under her own hand, notwithstanding any coverture, shall be deemed sufficient in the law ; and from and after her decease, then to hold, all and singular, the said trust estate, with the appurtenances, to and for the only proper use and behoof of all and every the child and children of the said Hannah, her surviving, his, her, or their heirs and assigns forever, if more than one, as tenants in common, and not as joint tenants ; but if either or any of the children of the said Hannah should be then deceased, leaving a child or children living, such grandchild or grandchildren of the said Hannah shall have and be entitled, in fee simple, to such part, share, and proportion of the said trust estate as his, or their deceased parent or parents would have been entitled to had such parent or parents then been living. Provided, however, that if my said niece, Hannah Fisher, shall depart this life not leaving a child or children, grandchild or grandchildren her surviving, or leaving a child or children, grandchild or grandchildren living, they shall all die in their minority, and without issue, then, and in such case, all the trust estate above described shall go, and I do hereby devise the same, to such person and persons, and for such estate and estates, and in such manner and

(Thompson *v.* Garwood.)

form, as she, the said Hannah C. Fisher, by her last will and testament in writing, or any writing under her own hand and seal, attested by two or more credible witnesses, by her intended as and for her last will and testament, notwithstanding any coverture, or whether she be covert or sole, shall nominate, direct, and appoint, and for want of such appointment, the same shall go, and I do give the same, to my nephew, Robert Knox Fisher, brother of the said Hannah, and to his heirs and assigns forever, in absolute fee simple.

Item.   It is my will that the abovenamed John Dennis and James Josiah, their heirs and assigns, shall and may, should they deem it most advisable so to do, at any time or times during the natural life of my said niece, the said Hannah C. Fisher, with her consent and approbation in writing, notwithstanding any [*295] coverture, and after her *decease, during the minority of her children, should she leave any, by and with the consent in writing of the guardian or guardians of such children, to grant and convey any part or parts of the trust estate aforesaid to any person or persons whomsoever, his, her, or their heirs and assigns forever, for the greatest and best annual ground rents that can or may reasonably be had and gotten for the same, and to reserve the same ground rents, payable semi-annually, to them, the said John Dennis and James Josiah, their heirs and assigns for the like several uses, intents, and purposes that are hereinbefore mentioned, expressed and declared, of and concerning the trust estate aforesaid, and to and for no other use, intent or purpose whatsoever.

Item.   I do give and devise to my nephew, the said Robert Knox Fisher, and to his heirs and assigns, all my wharf, lots of ground and buildings, situate on the east side of Swanson street, and north side of an alley, in Southwark aforesaid, now occupied partly by Snowden and Wager, partly by Mrs. Lonton, and partly by Mr. Taylor; bounded east by the river Delaware, south by the said alley, west by Swanson street, and north by late Devereaux's estate.   Also, the southernmost moiety or equal half parts of the aforesaid two lots on the east side of Front street, in the Northern Liberties, and extending to the Delaware river, one in the tenure of Samuel Medara, and the other in the tenure of —— Wallace; and also the northernmost and remaining moiety or equal half part of my ground on the east side of Front street and west side of Church street, (adjoining the lot at the rear end of the tavern lot) whereof my brother Barney Dennis, died seised,, and to which I am entitled as his heiress at law, as aforesaid, together with the appurtenances, to hold to him, the said Robert Knox Fisher, his heirs and assigns, to his and their own proper use and behoof forever.

(Thompson *v.* Garwood.)

Item. I give and devise unto the said John Dennis, and my friend, Robert M'Mullin, their heirs and assigns, the easternmost of my brick messuages on the north side of China street, and lot of ground thereto belonging, now occupied by John Green, together with the appurtenances, to hold to them, the said John Dennis and Robert M'Mullin, their heirs and assigns forever, in trust, nevertheless to make leases thereof from time to time, during the natural life of Mary Fuit, wife of Thomas Fuit, and recover and receive the rents, issues, and profits thereof, and pay over the same, when and as received, to the said Mary Fuit, for her own separate use and support, in such way and manner and so that the same, and every part thereof, shall not be in the power, or subject to the debts, control, or engagements of her husband, and for which her own receipts, under her own hand, notwithstanding any coverture, shall be deemed sufficient in law; and from and after her decease, then to hold the same to and for the only proper use and behoof of all and every the child or children of the said Mary Fuit, now born, or hereafter to be born, *his, her or their heirs and assigns forever, if more than one, as tenants in common, and not as joint ten- [*296] ants; and in case of her decease without leaving a child or children, grandchild or grandchildren, her surviving, then the messuage and lot last aforesaid, with the appurtenances, shall go to, and I do give and devise the same, to my cousin, Jesse Turner, his heirs and assigns, to his and their own proper use and behoof forever; and I do also give to the said John Dennis and Robert M'Mullin the sum of five hundred dollars, in trust, to be by them appropriated and paid for the separate use of the said Mary Fuit, on her separate receipt, in the same way and manner as is hereinbefore mentioned, concerning the rents and profits of the messuage and lot last aforesaid, so that the same shall not be in the power, or subject to the debts, control or engagements of her husband.

Item. I give and devise to the said John Dennis and Robert M'Mullin, their heirs and assigns, the middlemost of my said three brick messuages on the north side of China street, and the lot of ground thereto belonging, now occupied by Rachel Lawson, together with the appurtenances, to hold to them, the said John Dennis and Robert M'Mullin, their heirs and assigns forever, in trust, to make leases thereof from time to time, during the natural life of Elizabeth Hill, wife of Robert Hill, and to recover and receive the rents, issues, and profits thereof, and pay over the same, when and as received, to the said Elizabeth Hill for her own separate use and support, in such way and manner, and so that the same and every part thereof shall not be in the power, or subject to the debts, control or engagements of her

(Thompson *v.* Garwood.)

husband, and for which her own receipts, under her own hand, notwithstanding her coverture, shall be deemed sufficient in the law; and from and after her decease, then to hold the same to and for the only proper use and behoof of all and every the child or children of the said Elizabeth Hill, now born, and hereafter to be born, his, her or their heirs and assigns forever, if more than one as tenants in common, and not as joint tenants; and in case of her decease without leaving a child or children, grandchild or grandchildren, her surviving, then the messuage and lot last aforesaid, with the appurtenances, shall go, and I do give and devise the same to my cousin, Jesse Turner, his heirs and assigns, to his and their own proper use and behoof forever; and I do also give to the said John Dennis and Robert M'Mullin the sum of five hundred dollars, in trust, to be by them appropriated and paid for the separate use of the said Elizabeth Hill, on her separate receipt, in the same way and manner as is hereinbefore mentioned, concerning the rents and profits of the messuage and lot last aforesaid, so that the same shall not be in the power, or subject to the debts, control, or engagements of her husband.

Item. I do give and devise to my friend, Elizabeth Freeman, of the city of Philadelphia, widow, and to her heirs and assigns forever, *the westernmost of my said three brick messuages on the north side of China street, and the lot of ground thereto belonging, now occupied by Edward Gardner, together with the appurtenances, to hold to her, the said Elizabeth Freeman, her heirs and assigns, to her and their own proper use and behoof forever.

[*297]

Item. I give to my cousin, Jesse Turner, and to his heirs and assigns, my two contiguous small frame houses, and lots of ground thereto belonging, situate on the east side of Front street, between Christian and Prime streets, in Southwark aforesaid, one in the tenure of Lewis Huskey, and the other in the tenure of John Sheed, bounded on the south by ground of the widow Burden; and also all my lots of ground on the north side of Brown street, and east side of Fourth street continued, in the Northern Liberties, and county of Philadelphia, together with the appurtenances, to hold to him, the said Jesse Turner, his heirs and assigns, to and for his and their own proper use and behoof forever.

Item. I do give and devise to the said John Dennis and Robert M'Mullin, their heirs and assigns, my two brick and two frame tenements, and lots of ground thereto belonging, situate on the east side of Church street, in Southwark aforesaid, bounded on the west by Church street, on the south by my garden, on the east and north by the Swedes' burial ground, together with the

(Thompson *v.* Garwood.)

appurtenances, to hold to them, the said John Dennis and Robert M'Mullin, their heirs and assigns, in trust, to make leases thereof, and to receive the rents and profits of the same, and to pay and apply the same when and as received for and towards the maintenance and support of my nephew, John Fisher, during his natural life, in such way and manner as they, the said trustees, in their discretion may see fit, and so that the same, and every part thereof, shall not be in the power, or subject to the debts, control or engagements, of the said John·Fisher; and at and immediately after his decease, then the same tenements and lots last aforesaid, shall go to all and every the children of the said John Fisher, in fee simple, if more than one, as tenants in common, and not as joint tenants; and in case of the decease of the said John without leaving a child or children, grandchild or grandchildren, him surviving, then the same tenements and lots last aforesaid, shall go, and I do give the same to the above-named Robert Knox Fisher, his heirs and assigns forever, in absolute fee simple.

Item. And as to all the rest, residue, and remainder of my estate whatsoever, and wheresoever in the world, real personal and mixed, I do give, devise, and bequeath, the same to the abovenamed Hannah C. Fisher, and to her heirs, executors, administrators, and assigns, to and for their own proper use, benefit, and behoof, forever.

And lastly, I do nominate and appoint the said John Dennis, James Josiah, and Robert M'Mullin, to be executors of this my will. *Hereby revoking all others by me at any time [*298] heretofore made, I do declare this only to contain my last will and testament. In witness whereof, I, the said Henrietta Ware, have hereunto set my hand and seal, this thirteenth day of May, in the year of our Lord one thousand eight hundred and twenty. 1820."

The will of Mrs. Snowden, a copy of which also was annexed to the bill, is as follows.

" Be it remembered, that I, Hannah C. Snowden, of the city of Philadelphia, wife of Joseph S. Snowden, formerly Hannah C. Fisher, by virtue and in execution of the power and authority given to me, in and by the last will and testament of Henrietta Ware, late of the district of Southwark, widow, deceased, do make this my last will and testament in manner and form following, that is to say:—

First. I give and devise unto my executors hereinafter named, and to their heirs and assigns, all that wharf and lot of ground, on the east side of Swanson street, in the district of Southwark, bounded west by Swanson street, south by ground of Josiah Hanes, east by the Delaware river, and north by an alley.  Sub-

(Thompson *v.* Garwood.)

ject to the payment of the mortgage debt which is on the same. Also, that lot of ground on the east side of Front street and west side of Church street, in said district, which together with the wharf and lot of ground before mentioned, by the will of the said Henrietta Ware, are made subject to my direction and appointment, and all rents which have been or may be reserved out of the said lots or any of them or any part thereof, to have and to hold the said wharf and lot on Swanson street and the said lot on Front street, and the said rents which have been or may be reserved thereout or therefrom, in trust, to permit and suffer my sister Mary Fuit, to receive and have all the clear income or produce thereof to her own sole and separate use, for and during the term of her natural life, and from and after her decease, if her daughter Patsey Ann survive her, then to convey the same to the said Patsey Ann, her heirs and assigns forever; but if the said Patsey Ann die before her mother, the said Mary Fuit, and her mother, the said Mary Fuit at her death leave lawful issue, then to convey the same to such issue, his, her, or their heirs and assigns forever, in equal shares, if more than one; and in case the said Mary Fuit shall, at her death, leave no lawful issue, then to convey the same to the children of my brothers and sister, in equal shares and proportions, and to their heirs and assigns forever.

Second. I give and devise unto my said executors their heirs and assigns forever, the undivided moiety or half part of all that house and lot of ground thereto belonging, situate on the west side of Swanson street, in the district aforesaid, which said moiety of said house and lot is by the will of Henrietta Ware, made subject to *my direction and appointment, to have and to [*299] hold the same in trust, to permit and suffer my brother Robert Knox Fisher, to receive and have for his own use, all the clear rent, income, and product thereof, for and during the term of his natural life, and at and from his decease to convey the same to the children of the said Robert Knox Fisher, their heirs and assigns forever, in equal shares and proportions.

Third. I give and devise unto my said executors their heirs and assigns, the moiety or half part of all that lot of ground on the east side of Front street, in the Northern Liberties, in the tenure of William Wallace, which said moiety of said lot was by the will of the said Henrietta Ware, made subject to my direction and appointment; and all the rents which have been or may be reserved out of the said lot, to have and to hold the same in trust, to permit and suffer my brother John Fisher, to receive and have for his own use, all the clear rent, income and product thereof, for and during the term of his natural life, and at and from his decease, to convey the same to the children of the said

(Thompson *v.* Garwood.)

John Fisher their heirs and assigns forever, in equal shares and proportions.

Fourth. I give and devise unto the children of my said sister Elizabeth Hill, their heirs and assigns in equal shares and proportions, all that moiety or half part of a lot of ground, situate in Front street, in the Northern Liberties, now in the tenure of Margaret Medary, which moiety of said lot was by the will of the said Henrietta Ware, made subject to my direction and appointment, and all rents which have been or may be reserved out of the said lot, to have and to hold the same to their own use forever.

Fifth. I give and bequeath to my executors hereinafter named, and to each of them, the sum of four hundred dollars, the payment of which I charge upon the estate, which by the said will of Henrietta Ware is made subject to my direction and appointment, and which I direct and appoint to be paid out of the income or product of said estate before any other disposition thereof.

Sixth. I give and bequeath to my niece, Patsy Ann Fuit, all my clothing, my watch, trinkets, piano-forte and music books.

Seventh. I give, devise and bequeath to my sister Mary Fuit, her heirs, executors, administrators and assigns, all the rest and residue and remainder of my estate, and of the estate which by the will of the said Henrietta Ware, is made subject to my direction and appointment, to her and their own use forever.

And I do direct and appoint that the trustees under the will of Henrietta Ware, convey the estate holden by them in trust for such persons and for such uses as I shall nominate, direct and appoint, agreeably to the nomination, direction and appointment thereof made by this my will.

Lastly. I do nominate and appoint Richard Garwood and Benjamin Jones, Jr. to be the executors of this my will."

*The answer of the defendants admitted that Henrietta Ware was seized of the premises therein mentioned, and made her last will in manner and form therein stated, the contents of which were as therein stated, and died seised of the same, without altering her said will—and that Robert K. and John Fisher therein named, were bachelors at the making thereof and death of the said testatrix. That James Josiah and John Dennis the trustees in said will named, died, and the respondents were made trustees in their place, by the order and decree of this Court, under the proceedings in said petition mentioned. That after the death of the said Henrietta Ware, Hannah C. Fisher intermarried with Joseph S. Snowden, and died at the time in the said petition stated, without any issue living at her death, having first in manner therein mentioned, made her last will, the contents whereof are as is therein stated. That the respondents

[*300]

(Thompson *v.* Garwood.)

were duly qualified as executors thereof, and took upon themselves the execution of the trusts therein mentioned.

That at the making of the will of said Hannah C. Snowden, and at the time of her death, the said Robert Knox Fisher had issue only the two children in the said petition named, and has not since had any other issue. That the said two children had since died intestate, unmarried and without issue, leaving their said father surviving them.

That the said Robert Knox Fisher, and Sarah his wife did, on the tenth day of Nov. 1835, make the conveyance in trust therein mentioned, to the said John Thompson, who has since paid to the respondents the proportion chargeable upon the said premises of their legacy of $400 each, charged by the will of the said Hannah C. Snowden on her whole estate as is in the said petition mentioned, and that the facts therein stated, concerning Mary Fuit and John Fisher, and Elizabeth Hill, and their respective children, are therein truly stated and set forth. "But for as much as these respondents are advised that there existed under the will of said Hannah C. Snowden, at the time of her death a contingent remainder to after-born children of said Robert Knox Fisher, should he have any, and are not certainly advised whether the same, if it did then exist, did or did not cease (and has or has not now ceased) to exist, by reason of the determination of his said equitable life estate, on the descent to him of the equitable remainder in fee, or whether or not the said descent caused or was attended with any such determination of said life estate, and for as much as they are advised that if any such contingent remainder to after-born children do now continue to exist, equity will not permit or sanction, much less compel, a conveyance of the legal estate, so as to enable or facilitate the barring and defeating of the same, and generally for as much as these respondents are not advised whether the trust in them vested is or is not expired. Therefore (although if such trust have really [*301] expired, they are *willing and ready, under the direction of this Court, to convey the legal estate as in the petition prayed. And although they cheerfully submit themselves to any order and direction whatsoever that your honours may deem proper and comformable to equity and good conscience, in the premises, yet) they are not prepared to admit and without the sanction of the decree of this Court first had and obtained, do not admit that the petitioners are entitled to the relief prayed by them in their bill or petition before mentioned.

And these respondents pray that this their answer may stand as a demurrer or plea if so it may the better avail in bar or prevention of the relief in the said petition prayed."

(Thompson *v.* Garwood.)

Mr. *Cadwalader*, for the complainants.—The right of Mr. Fisher to a conveyance of the legal estate, depends upon two questions :

1. Whether there was, at the death of Mrs. Snowden, a contingent remainder to his after-born children.

2. If there was, whether such remainder exists at present.

1. There never was a remainder to any other children of Mr. Fisher, than those in existence at the death of the testator. In the first place, the execution of the power must be referred to the instrument creating, and cannot go beyond it. *Wilkes* v. *Holmes*, (9 Mod. 485). Equity will not aid mere volunteers. *Duke of Marlborough* v. *Lord Godolphin*, (2 Ves. 73, 74, 76, 78). The will of the immediate testator looks to present children only. Mrs. Snowden's will is to be read as a codicil to Mrs. Ware's, and as if the latter were ambulatory until her death. Both wills look to the living only. The cases in favour of *post nati* rest on intention altogether. When the intention can be shown to be different, there is no foundation for the rule. *Southby* v. *Stonehouse*, (2 Ves. 612). Wherever the execution exceeds the power, it is void for the excess. Hence it is necessary to have the power always in view. *Taylor* v. *Horde*, (1 Burr. 120) ; *Robinson* v. *Hardcastle*, (2 Term. Rep. 251) ; *Earl of Jersey* v. *Smith*, (7 Price, 281 ; 3 Eng. Exch. Rep. 805). I am not aware of any case in which the rule that lets in after-born children has been admitted to the abridgment of a fee simple given in other parts of the will. In *Pemberton* v. *Parke*, (5 Binn. 611,) Judge Yeates states the rule to be, that where the devise or gift to the children is general, and not limited to a particular period, it is then confined to the death of the testator. In *Heisse* v. *Markland*, (2 Rawle, 275,) Chief Justice Gibson treats it as a question of convenience. It is an anomaly, that a remainder should be vested as to those *in esse*, and contingent as to those not *in esse*. If from a comparison of other provisions in the will, the intention can be shown to be different, the after-born will not be admitted. *Wilde's Case*, (6 Coke 76) ; *Holman* v. *Seymour*, (1 Vesey, 210) ; *Salkeld* v. *Vernon*, (1 Eden, 70). [KENNEDY, J. Is there any case where the estate was given to the parent for life, and after his *death to his children, that the after-born have not taken ? Besides, here were [*302] directions to convey.] There are authorities to show that directions to convey will be referred to the quantity of the estate. There was certainly a vested estate in the children *in esse*, (2 Vernon, 710.) An examination of the will, will show that a different intention may be presumed. As to Mrs. Snowden's will, more than one child of Mr. Fisher was *in esse* at the date of the will. I agree, that this does not affect the will now, but

(Thompson *v.* Garwood.)

at least it proves nothing repugnant.   In *Bateman* v. *Roach*, (9 Mod. 105,) it was the turning point of the case, that the words were plural.   *Madison* v. *Andrew*, (1 Ves. 60).   There are several instances in this will, from which it appears, that she knew how to provide when she meant to include after-born children.   In the case of Mrs. Fuit, they are expressly provided for.   Mrs. Ware's will proves that she also knew how to provide for *post nati;* and in the case of Mrs. Fuit she indicates a preference for the living children.   I contend, that for the purpose of construction, the will in question is to be taken as a codicil to Mrs. Ware's will.   *Mogg* v. *Mogg*, (1 Merivale, 654,) where the point decided is inaccurately stated, as is remarked in 2 Jarman's Powell on Devises, 322, 3.   It is settled, that a direction to convey does not convert an executed into an executory trust, and at the proper time to be invested with its appropriate legal clothing.   *Glenorchy* v. *Bosville*, (Talbot, 19); *Stanley* v. *Leonard*, (1 Eden. 95); Fearne, 143, 4; *Jervoise* v. *The Duke of Northumberland*, (1 Jac. & Walker, 550); 1 Preston on Estates, 185, 356, 885; 1 Preston on Abstracts, 135; 1 Saunders on Uses, 313.

2nd. Upon the second point was cited Preston on Merger, p. 70.

Mr. *James S. Smith*, for the respondents.—The respondents in this case are mere trustees having no interest, and content to abide the decision of the Court.   They submit, however, that they ought not to be required to do any thing which is not plainly in accordance with the expressed will of the testator. Equity will not compel a trustee to convey, except in a clear case.   *Davis* v. *Wells*, (1 Vernon, 181); 1 Madd. Chan. 558, &c.   Now the intention of Mrs. Snowden seems to have been to provide for all the children, and this is according to the general and natural views of testators.   The devise is not to the children *nominatim;* and they are not to take until their father's death. In the devise to her brother John, the word *children* is used, although there was only one living.   Why were trustees interposed to preserve contingent remainders, if only those living were intended?   The rule is, that where children are not to take until the death of a third person, all who come *in esse* before his death are entitled.   The case of taking after the death of a father is stronger.   *Baldwin* v. *Carr*, (Cowper, 309, 314); *Pemberton* v. *Parke*, (5 Binn. 601); *Heisse* v. *Markland*, (2 Rawle, 675); [*303]  *Swift* *v. *Duffield*, (5 Serg. & Rawle, 39); *Wager* v. *Wager*, (1 Serg. & Rawle, 374); Fearne, 331.   If R. K. Fisher took an estate in fee, what necessity is there for the interference of equity?   If the legal estate is determined, he may

(Thompson v. Garwood.)

recover in ejectment. The doctrine of merger is supposed to be applicable in this case. Here the father has an equitable estate for life, with a remainder in fee to his children, born and unborn. The case of *Wager* v. *Wager* shows that there is no merger in such case. Fearne, 32; 6 Cruise's Digest, 366. Then as to the estate of the parents under the intestate laws. The third section of the act of the 5th of April, 1833, provides, that on the death of an unmarried person, intestate, the real estate of such decedent shall go to his father and mother during their joint lives and the life of the survivor. The fifth section declares, that in default of brothers and sisters of such decedent, the real estate shall go to and be vested in his father and mother, or if both be living at the time of his death, in the father and mother for such estate as the intestate had therein. The ninth section contains a proviso that no person who is not of the blood of the ancestor or other relation from whom any real estate descended, or by whom it was given or devised to the intestate, shall in any of the cases before mentioned take any estate of inheritance therein, &c. It is doubtful whether the proviso applies to all the cases preceding it, or only to the section immediately before it. At all events, in this case, Mrs. Fisher has an estate for her life, which will become a several estate, if she survives her husband. But supposing that the father alone takes the inheritance, when did he take it in this case? The words "in default of brothers and sisters," in the intestate law, are not referred to any particular period, but may be taken to apply to the death of the father. At common law, the birth of a child will divest an estate after a descent. Co. Litt. 11, b.; 3 Cruise Dig. 352; Bro. Abr. tit. Descent, pl. 58. The case is to be considered on the will of Mrs. Snowden alone. The obvious intent of Mrs. Ware was to give an absolute power of disposition to Mrs. Snowden. *Holman* v. *Seymour*, (1 Ves. 209).

The opinion of the Court was delivered by

SERGEANT, J.—It appears by the petition and answer, that Hannah C. Fisher was the niece of Henrietta Ware, and the latter, by her will, devised the real estate in question to trustees, in trust for the separate use of Hannah C. Fisher for life, with remainder to her child or children surviving her, or their children, taking *per stirpes*. If, however, Hannah C. Fisher, died without leaving such child, &c., surviving her, or if living, they died in their minority, then the estate should go and she devised the same, to such person or persons, and for such estate and estates, and in such manner and form, as she, the said Hannah C. Fisher, by her last will, or *any writing, &c., intended as such, should nominate, direct and appoint—and for want of [*304]

(Thompson *v.* Garwood.)

such appointment, to Robert Knox Fisher, in fee simple. Hannah C. Fisher intermarried with Joseph S. Snowden, and died without leaving any child, or the issue of any. She made a will, and intending to execute the power, devised the premises to her executors in fee, in trust to permit and suffer her brother, Robert Knox Fisher, to receive and have for his own use, all the clear rent, income, and produce thereof for and during the term of his natural life; and at and from his decease, to convey the same to the children of the said Robert Knox Fisher, their heirs and assigns forever, in equal shares and proportions. At the time of making this will, and death of Mrs. Snowden, Robert Knox Fisher had two children, a daughter and a son, both since dead, at the respective ages of three and seven years. The prayer of the petition is, that the trustees, (new ones appointed in place of the former, who died,) may convey the legal estate to the petitioner, who is the alienee of Robert Knox Fisher and his wife.

To this petition an answer has been filed; and the question is, whether the devise over by Mrs. Snowden, in execution of the power, after the termination of the estate for life of her brother Robert Knox Fisher, conveyed a vested estate in remainder, solely to the children which he had living at the date of her will and her decease; or whether children that might happen to be born after the death of Mrs. Snowden, should not be let in. In the latter case, as he is living, there is a possibility of his yet having other children born; in which case the trust must continue for their benefit; in the former, it is contended on behalf of the petitioner, that the vested estate in fee in the two children, descended on the death of the survivor of them to their father, Robert Knox Fisher, and united with his life estate, so that he became tenant in fee simple thereof.

Taking into view only the clause in the will of Mrs. Snowden on this subject, it would seem, that the devise was not limited to the children which Robert Knox Fisher had at her decease, but extended to the children he might afterwards have during the rest of his lifetime. The devise is of an estate for life in Robert Knox Fisher, and *at and from his decease,* to convey the same to the children of the said Robert Knox Fisher, and their heirs and assigns forever, in equal shares and proportions. There is no express limitation to the children then living, who may be supposed to have been known to Mrs. Snowden.

In the absence of any such preference, it is a decisive circumstance, that the conveyance is not to be till, at and from his decease. That was marked out by the testator as the period when the distribution was to be made, and in the mean time, and during his life, all the income and profits were to go to the use of the

(Thompson v. Garwood.)

father, Robert *Knox Fisher. The case appears to fall [*305] within the rule settled by this Court in the case of *Pemberton* v. *Parke*, (5 Binn, 611). There the testator gave the bulk of his estate " to his widow, during her life or widowhood, and to the children and grandchildren of his brother Israel Pemberton, to be equally divided among those of them who may be then living, two thousand pounds; and the word, *then*, was agreed to refer to the death of the widow. It was held, that until the death of the widow, the legacy did not vest, but was suspended, and was clearly contingent, as to such of the descendants as should survive the widow. And the rule is thus laid down by Mr. Justice Yeates. "It is impossible to reconcile all the different decisions on this branch of the law. It would seem, however, that this general rule may be collected from the cases. When the devise or gift to the children is general, and not limited to a particular period, it is then confined to the death of the testator. *Northey* v. *Burbage*, (Prec. Ch. 470);    ⁕ *Heathe* v. *Heathe*, (2 Atk. 121); *Horsley* v. *Chaloner*, (2 Ves. 83); *Isaac* v. *Isaac*, (Amb. 348). But when such devise or gift is to one for life, or when the distribution is postponed to a future time, there, children born during the life, or before the time of distribution, are let in. *Harding* v. *Glynn*, (1 Atk. 470); *Graves* v. *Boyle*, (Ib. 509); *Houghton* v. *Harrison*, (2 Atk. 329); *Ellison* v. *Airey*, (1 Ves. 111)."

But it is contended, that whatever may be the construction of this clause, as it stands alone, yet that a different intention is evinced in the first place in the will of Mrs. Ware, the donor of the power, and in the next place in the will of Mrs. Snowden, the donee.

And first, as to the will of Mrs. Ware. I am not able to comprehend in what way any language in the will of Mrs. Ware in her distribution of other property by other clauses of her will, among children or other persons, by which she explicitly extends her bequests to children *surviving* or *afterwards to be born* can affect the present question. For it is to be observed, that this is a general power given by the will of Mrs. Ware to Mrs. Snowden, and not a particular or limited power. The estate is to go, in default of children, &c., of Mrs. Snowden, to such persons, and for such estate, and in such manner, as she should by will &c., appoint. She might limit and appoint it to go to any person or persons she pleased, though they were utter strangers to Mrs. Ware and to her, and that in fee, for life or lives, or for such other estates as she should choose to carve out. Had Mrs. Ware invested her with a power to appoint to such and such children, then her intent, as inferrible from the lanlauge of other portions of her will, might perhaps be resorted to

(Thompson *v.* Garwood.)

for the purpose of ascertaining the extent of a power, in case of a doubt. But where she gives a general and unlimited power, which may or may not afterwards be exercised in favour of any body's children, how can her description of the children who are to take under other devises or bequests be of any importance? [*306] Or how *can it be, that a general power shall be in this way cut down to a limited one? For the law has established an important distinction between general and particular powers. By a general power is understood a right to appoint to whomsoever the donee pleases. By a particular power is meant, that the donee is restricted to some objects designated in the deed creating the power, as to his own children. A general power is, in regard to the estates which may be created by force of it, tantamount to a limitation in fee, not merely because it enables the donee to limit a fee, but because it enables him to give the fee to whom he pleases. He has an absolute disposing power over the estate, and may bring it into the market, whenever his necessities or wishes may lead him to do so. Therefore whatever estate may be created by a man seised in fee, may equally be created under a general power of appointment: and the period for the commencement of limitations, in point of perpetuity, is the time of the execution of the power, not of the creation of it. 1 Sudg. Powers, 495. A power general in terms will not be cut down to a particular power, unless there is an apparent intent. *Bristow* v. *Warde*, (2 Ves. Jr., 336). There is no such intent apparent in the will of Mrs. Ware, as that Mrs. Snowden's power should be limited in favour of particular children of Robert Knox Fisher, or indeed in favour of any of his children.

It is contended, that it is a rule, that the appointee must claim under the instrument creating the power, and that both the instrument creating, and the one executing the power must be read together. And that is true, so far as respects the question *how* the estate is created, but not as to *what* is created. Thus it is laid down by Lord Hardwicke, in the case of *The Duke of Marlborough* v. *Lord Godolphin*, (2 Ves. 61,) and other cases cited by the counsel for the petitioner, that the appointee takes *in the same manner* as if the power and instrument executing it were incorporated in one instrument. So it is in appointments to uses. If a feoffment be executed to such uses as the feoffer shall appoint by will, when the will is made, the *cestui que use* is in by the feoffment. But when it was attempted to push this rule to the extent, that the acts done in consequence of and by virtue of an authority and pursuant thereto, were the acts of the old proprietor, and even of that day when he, by virtue of his ownership, delegated that authority, Lord Hard-

(Thompson v. Garwood.)

wicke overruled the attempt; and indeed it would seem to lead to consequences too paradoxical to be admitted. On the contrary, the rule is, that the construction of the instrument executing a general power is the same as if the donee had made a conveyance by deed or will. In the execution of powers, says Mr. Sugden, (1 Sugd. Pow. 556,) by deed or other act *inter vivos*, technical expressions are as necessary in the limitation of the estate as in feoffments or gifts at common law. Therefore if, under a power, the estate be appointed to A., and the deed express or limit no estate, *the appointee will take an estate for life only. And so in every other case which [*307] may be put, the construction would be the same as upon a feoffment at common law. A different construction is not to be made on conveyances to uses from that which is put on common law conveyances; the same rule of construction applies to both. 3 T. R. 765.

Wills executed under powers receive the same construction as proper wills. In *The Duke of Marlborough* v. *Lord Godolphin*, (2 Ves. 61,) Lord Hardwicke said, " so if a power is given by a deed to appoint lands by will, and the person to whom the power is given makes a will, and gives the land to A., and to his issue, the law says, that though such appointee takes under the power, yet the execution of the power being by will, it shall receive the same construction as a devise of lands, viz. an estate tail." So, if it had been to A. forever, that would have been an estate in fee. It was never doubted, but that the construction of the words should be exactly as if he took strictly and properly under the words of a will. And conformably to this opinion, in a later case of an execution of a power by will, Lord Hardwicke held, that although the will was not a proper will, yet that the words of it were to have the like construction as if it was a proper will : for otherwise there would be a strange confusion in the construction of writings, if they were to have one construction when proper wills, and another when improper. The words, therefore, are to receive the same liberal and beneficial construction, as the words in a proper will. And he determined an informal limitation to be an estate tail, although it clearly could not have been so construed, had it been contained in a deed. *Southby* v. *Stonehouse*, (2 Ves. 610).

All these authorities, as well as the plain and obvious nature of the case, seem to show, that this being a general power to Mrs. Snowden, her intention, as expressed in her will, is alone to be regarded, in determining the construction to be put on its execution by her will; and that other clauses in the will of Mrs. Ware, the donor, not relating to the power, cannot affect that construction, as she could not possibly foresee how Mrs. Snow-

(Thompson *v.* Garwood.)

den might choose to dispose of the estate, or whether she would give it to any children at all, born or to be born, but left it to her to do as she pleased.   Nor is it to be presumed, that Mrs. Snowden looked at Mrs. Ware's other devises, or had any view to her wishes in her various dispositions or use of words, any more than an attorney in fact executing a power to sell lands, is to be supposed conversant of the deeds or instruments executed between his principal and other parties.

Nor am I able to discover any thing in the will of Mrs. Snowden that goes to change or vary the disposition made according to the rules of law by the clauses in question.   They relate to other estates, and other devisees, and whether she chose in relation to them to use the same, or different words, does not in the [*308] present *case aid us in discovering the intention contended for.   In one clause she selects a·daughter of Mrs. Fuit, then living, whom, by name, she makes sole devisee, if she survived Mrs. Fuit, but if she died, and her mother left lawful issue, then the estate was to be conveyed to them; in case she left none, then to the children of the testator's brothers and sisters in equal shares.   Another clause gives to John . Fisher, for life, in the same manner as is done in relation to the premises now in question.   Another is to the children of Mrs. Hill. · These dispositions do not seem to elicit any thing that developes the intent of Mrs. Snowden as to the children of Robert Knox Fisher in the devise relating to them, so as to control its interpretation and legal effect; and it must therefore be construed by itself.   According to that construction, it was à devise of a contingent remainder to all the children of Robert Knox Fisher, born, or to be born; and as he appears on these proceedings to be yet living, and therefore in contemplation of law may have children, the trust must remain for their benefit.

Petition dismissed.

---

Note. The bill in the case was dismissed without prejudice. It appeared afterwards that R. K. Fisher had died at sea or in foreign parts, before the hearing of the case.

Cited by Counsel, 2 Watts & Sergeant, 432 ; 1 Casey, 250.