CASE 107—PETITION EQUITY—JUNE 22.

# Morgan, &c v. Halsey, Trustee.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. THE INTENTION OF THE DONOR OF A POWER IS THE GREAT PRINCIPLE THAT GOVERNS IN THE CONSTRUCTION OF POWERS; and in furtherance of the object in view the courts will vary the form of executing the power, and, as the case may require, either enlarge a limited to a general power or cut down a general power to a particular purpose.

A mother devised her estate to a trustee for the sole and separate use of her daughter for and during the period of her natural life, with the right on her part to use and control proceeds as she

might think proper, and at her death the whole to belong to her children, should she have any. But in case she should leave no issue she was invested with the power of disposing of the estate in any manner she might deem proper by writing in the nature of a last will and testament. The testator then provided that if the daughter should die without issue, and "without having made any disposition of the property as above provided," it should go to the brothers and sister of testatrix, this clause being, added: "In making this devise in the event of my daughter dying without issue and failing to make any disposition of the estate, I have desired in the first place to make her independent and comfortable, and in the next place to leave her a memorial of my wishes as to its ultimate disposition, unless circumstances should alter, of which she is to be sole judge, not intending hereby to control her perfect freedom to do with it as she pleases at her death without issue." Held—That the power of appointment conferred upon the daughter was not absolute and unconditional, but was intended to be exercised only in the event "circumstances should alter," and as it is not stated in the will of the daughter, and does not otherwise appear, that there was any alteration or change of the condition or circumstances surrounding the daughter or the other devisees under the mother's will, the attempted exercise of the power of appointment by the daughter by her last will is void, and the devise by the mother to her brothers and sister takes effect.

2. FINAL ORDER—CONCLUSIVENESS OF JUDGMENT.—In this action brought by the trustee under the wills of both mother and daughter asking a construction of both wills, a judgment directing him to turn over the mother's estate to himself as trustee under the daughter's will, and do certain things in execution of the provisions of the daughter's will, was not a final judgment, and did not preclude one of the devisees under the mother's will who was before the court when the judgment was rendered from thereafter questioning the validity of the attempted exercise by the daughter of the power of appointment under the mother's will. But even if the judgment was final and binding on the devisee before the court, the devisees who were not then before the court had the right to thereafter file pleadings in the action and question the validity of the daughter's will in so far as it attempted to dispose of the mother's estate, and a judgment holding it invalid will inure to the benefit of all devisees under the mother's will.

WM. LINDSAY, BYRON BACON, BASIL W. DUKE, J. D. HUNT AND ERNEST MACPHERSON FOR APPELLANTS.

1. This court has jurisdiction notwithstanding the property or inter-

Morgan, &c v. Halsey, Trustee.

est involved may be situated without the State. (Mitchell v. Bunch, 2 Paige, 606; Hanley & King v. James et al, 7 Paige Chy., 213; Carroll v. Lee, 3 Gill & J., 404; Great Falls Mfg. Co. v. Wooster, 23 N. H., 462; Massie v. Watts, 6 Cranch, 148; Watkins v. Hollman, 16 Peters, 25 and 27; note to Penn v. Lord Baltimore, 3 Leading Cases in Equity, p. 783; Perry on Trusts, secs. 70 and 71; Mason v. Chambers, 4 J. J. Mar., 410 and 411; Newton v. Bronson, 13 N. Y., 587.)

2. The legality of the charity is to be determined by the law of the place where it is to be applied. (1 Jarman on Wills, p. 458; New v. Bonaker Law Rep., 4 Eq., 655; Att'y Gen'l v. Mill, 3 Russell's Eq. Rep., 328; Perry on Trusts, vol. 2, sec. 741.)

3. The so-called doctrine of cy pres, had it not been abrogated in Kentucky, could have no application to this case. (1 Jarman on Wills, pp. 458 and 459; 2 Pomeroy's Eq. Jur., sec. 1027.)

4. In this State the cy pres doctrine is repudiated, and the statute of 43 Elizabeth is repealed. (1 M. & B., p. 308; Gass & Bonta v. Wilhite, 2 Dana, 170; Curling v. Curling, 8 Dana, 38; Chambers v. Baptist Educational Society, 1 B. M., 215; Attorney General v. Wallace, 7 B. M., 611; 2 Perry on Trusts, p. 388, note; Cromie's heirs v. Louisville Orphans' Home Society, 3 Bush, 373.)

5. The tomb or chapel to be erected at Spa, in Belgium, is in no sense a charity. (Bates v. Bates, 134 Mass., 307; Melick v. Asylum, Jacob, 180; Kelly v. Nichols, 17 R. I., 317.)

6. The provision relating to the Hunt-Grosch Asylum is too indefinite and uncertain to be enforced. (Holland v. Alcock, 108 N. Y., 323; Levy v. Levy, 33 N. Y.; Maught v. Getzendammer, 65 Md., 527; Zeiseveiss v. James, 63 Pa. St., 468; Grimes v. Harmon, 35 Ind.; Holland v. Peck, 2 Ired. Chy., 255; Green v. Allen, 5 Humph., 170; Bridges v. Pleasants, 4 Ired. Chy., 26; White v. Fiske, 22 Conn., 31; Colt v. Comstock, 51 Conn., 352; Bolles v. Smith, 39 Conn., 217; Att'y Gen'l. v. Soule, 28 Mich., 153; Pritchard v. Thompson, 95 N. Y., 76; Thomas v. Howell, L. R., 18 Eq., 198; Carpenter v. Miller, 3 W. Va., 174.)

The Kentucky cases are not inconsistent with this view. (Peynado's devisees v. Peynado's exor., 82 Ky., 5; Leeds v. Shaw's adm'r, 82 Ky., 79; Kinney v. Kinney, 86 Ky., 610; Penick v. Thom's trustee, 90 Ky., 665; Ford v. Ford's exor., 91 Ky., 572.)

7. Even a charitable trust, where the incorporation of a permanent institution is intended, violates the statute against perpetuities. (Cruikshank v. Home for the Friendless, 18 Abbott's New Cases, p. 282; Levy v. Levy, 33 N. Y.)

8. A power of disposition can not be executed for the benefit of the life tenant. (Perry on Trusts, sec. 511.)

The intention of the donor controls the exercise of the power.

(Wilson v. Trump, 14 Am., Dec., 465; White v. Tudor's Leading Cases in Equity, Part 1, vol. 1, sec. 384.)

Considering these two rules in connection, the attempted evasion is manifest so far as the proposed chapel and tomb are concerned.

9. The Baroness took only an estate for life, and was invested with a power of disposition or appointment only in the event that she died without issue, and then to be exercised only in regard to certain beneficiaries in whose behalf Mrs. Strother's will created a trust. The only way of reconciling the various provisions of the will is to limit the discretion of the Baroness to the method of distribution among those beneficiaries. (Kent's Comm., vol. 4, star page 237; Washburn on Real Property, Book 2, star page 320; Colton v. Colton, 127 U. S., 312; Elliott v. Elliott, 117 Ind., 380; Noe v. Kern, 93 Mo., 367; Warner v. Bates, 98 Mass., 274; Knox v. Knox, 59 Wis., 172; Bohon v. Barret, 79 Ky., 378; Major v. Herndon, 78 Ky.; Collins v. Carlisle's heirs, 7 B. M., 13; Perry on Trusts, sec. 114; Balls v. Damfman, 69 Md., 390.)

CHARLES J. BRONSTON ON SAME SIDE.

1. It was the intention of Mrs. Strother that her property should go to her own kindred, and the only discretion which she conferred upon her daughter was to say in what proportion the beneficiaries she had selected should take, no power to select other beneficiaries being conferred. And that discretion was to be exercised only in the event "circumstances should alter." (Howell v. Tyler, 91 N. C., 207; Quinn v. Hardenbrook, 54 N. Y., 86.)

2. Even if the Baroness was to have the power to select other beneficiaries than those named by her mother, she was to have that power only in the event the "circumstances" or financial condition of those beneficiaries should alter. The power was therefore a conditional one and it devolved upon the donee of the power, or upon the appellee, to show that the conditions permitting its exercise had arisen. (18 Am. & Eng. Enc. of Law, 937; 4 Kent's Comm., star page 330; *Idem*, pp. 365, 366.)

3. The devise by Mrs. Strother to her daughter contains all the elements necessary to sonstitute a precatory trust. (Knox v. Knox, 59 Wis., 172; Major v. Herndon, 78 Ky., 123; Warner v. Bates, 98 Mass., 274.)

4. The provision in relation to the chapel or tomb is certainly illegal. (Johnson v. Holifield, 79 Ala., 423; s. c. 58. Am. Rep., 596; Kelley v. Nichols, 17 R. I., 317.)

The donee of the power had no right to dispose of the estate for her own benefit. (Balls v. Damfman, 69 Md., 390.)

5. The *cy pres* doctrine can have no application under Kentucky laws to any possible charitable bequest. (Cromie's heirs v. Louis-v. Thom, 90 Ky., 665; Ford v. Ford, 91 Ky., 592; P. E. Society v. ville Orphans' Home Society, 3 Bush, 373; Beekham v. Bousor, 23 N. Y., 298; note by Judge Freeman, 80 Am. Dec., 288.)

6. The power given by Mrs. Strother to her daughter reposed a personal trust and confidence in the daughter as the donee, and she could delegate this to no other person.   (1 Snyder on Powers, p. 213; Pearson v. Jamison, 1 McLean, 197.)

7. The will of the Baroness is utterly unreasonable, the money being totally inadequate for the purposes contemplated, and the chancellor should not render a decision sustaining an inevitable waste of money simply because it is denominated charity.

SIMRALL & BODLEY FOR APPELLEE.

1. The asylum clause, whether it be tested by the common law, or by the statute of 43 Elizabeth, or by the law of Missouri, or by the law of Kentucky, is clearly valid. (Perry on Trusts, secs. 687, 710; 2 Pomeroy's Equity, sec. 1018; Story's Equity, sec. 1169; 2 Minor's Inst., p. 231; Russell v. Allen, 107 U. S., 163; Inglis v. Sailor's Snug Harbor, 3 Pet., 99; Ould v. Washington Hospital, 95 U. S., 303; Whicker v. Hume, 7 H. L. Cas., 124, 141, 155; Gass v. Wilhite, 2 Dana, 170; Moore v. Moore, 4 Dana, 354; Curd v. Wallace, 7 Dana, 190; Curling's adm'r v. Curling's heirs, 8 Dana, 38; Chambers v. Baptist Educational Society, 1 B. M., 214; Attorney General v. Wallace, 7 B. M., 612; Cromie's heirs v. Louisville Orphans' Home, 3 Bush, 372; Peynado v. Peynado, 82 Ky., 13; Leeds v. Shaw, 82 Ky., 79; Kinney v. Kinney, 86 Ky., 611; Penick v. Thom., 90 Ky., 665; Ford v. Ford, 91 Ky., 592; P. E. Society v. Churchman, 80 Va., 718; Chambers v. City of St. Louis, 20 Mo., 543; Academy of Visitation v. Clemens, 50 Mo., 167; Goode v. McPherson, 51 Mo., 126; Schmidt v. Hess, 60 Mo., 591; Schumaker's Est. v. Reel, 61 Mo., 692; First Baptist Church v. Robinson, 71 Mo., 326; Howe v. Wilson, 91 Mo., 49; Powell v. Hatch, 100 Mo., 592.)

The doctrine of charities as generally recognized does not exist in New York, and has not existed there, and therefore the New York cases have no application here. (Bascom v. Albertson, 34 N. Y., 584.)

Even if it were true that the Maryland and New Jersey poor are not capable under our law of being the beneficiaries of the Baroness' bounty, still the Kentucky poor are. If a trust is created for two persons, or sets of persons, the fact that one of them can not receive the benefit of the trust will not deprive the others of it.   (Perry on Trusts, sec. 709.)

2. The chapel bequest is both charitable and valid, a chapel being a

Morgan, &c v. Halsey, Trustee.

place of worship. (Bispham's Eq., sec. 119; 2 Williams on Executors, 1072, citing 7 B. M., 611; 2 Dana, 170.)

But even as a tomb or monument the chapel bequest would be valid. (Perry on Trusts, sec. 706; Howe v. Wilson, 91 Mo., 49; Fite v. Beasley, 12 La., 339; Ford v. Ford's exors., 91 Ky., 572.)

3. The Baroness had power under Mrs. Strother's will to dispose of the latter's estate in favor of a charity. The words of recommendation or request did not create a trust, the testator having in effect declared that such was not her intention. (Story's Equity, 1069; notes to Harding v. Glyn, 3 White & Tudor's Leading Cases in Equity; Meredith v. Henlag, 1. Sim., 536; Sale v. Thornberry, 86 Ky., 266; Enders v. Tasco, 89 Ky., 17; Perry on Trusts, sec. 115; Pomeroy's Equity, sec. 1016; 1 Minor's Inst., 65.)

4. The judgment of May 17, 1888, was final and binding upon Mrs. Morgan, and the case having been finally disposed of by that judgment, there was thereafter no case in which strangers could intervene. Therefore the pleadings subsequently filed by Mrs. Dudley and Thomas H. Hunt's heirs were mere nullities, and those parties have no standing in court. (Hawes on Parties, sec. 109; Pomeroy's Remedies, sec. 423; Brown v. Vancleve, 86 Ky., 385; Larue v. Larue, 2 Litt., 261; Evans v. Stone, 80 Ky., 110.)

B. F. BUCKNER ON SAME SIDE.

1. The judgments of May, 1888, were final, and it was not in the power of the court rendering them to set them aside and rehear the matter litigated, except in a proceeding for their vacation, and upon grounds specified in the statute. (McManama v. Garnet, 3 Met., 517; Magman v. Pennybacker, 3 Met., 502: Scott v. Scott's exor., 9 Bush, 176.)

2. The judgment being final, all the persons interested in the adjudication are bound by its provisions, and it is too late to claim an interest in the controversy and intervene after the decision. (Hawes on Parties, sec., 109; Pomeroy's Remedies, sec. 423; Brown v. Vancleve, 86 Ky., 385; Larue v. Larue, 2 Litt., 261.)

3. The chapel clause is valid. (Perry on Trusts, sec. 706; Lloyd v. Lloyd, 10 Eng. L. & Eq., 139; Dexter v. Gardiner, 7 Allen, 247; Swasey v. Amer. Bible Soc., 57 Me., 527; Gravener v. Hallam, Amb., 643; Bispham's Eq., sec. 133; Chapman v. Brown, 6 Ves., Jr., 404; Willis v. Brown, 2 Jurist, 987; Mitford v. Reynolds, 1 Phillips Chy., 196; Smith v. Hess, 60 Mo.; Ford v. Ford, 91 Ky., 572; 1 Jarman on Wills, side page 193.)

The rule against perpetuities has no application in case of a charitable use. (Russell v. Allen, 107 U. S., 163; Perry on Trusts, sec. 384: Gass v. Wilhite, 2 Dana, 183; Philadelphia v. Girard, 45 Pa. St., 26.)

**4.** Even if the chapel clause is void, the sum dedicated for that purpose falls into the residue devised for the asylum. (Linley v. Gurr, 6 Madd. Chy., 99; *In re* Williams L. R., 5 Chy. Div., 737; *In re* Birkett, L. R., 9 Ch. Div., 578; Fisk v. Attorney General L. R., 4 Eq., 524.)

**5.** The asylum clause is valid. (Gen. Stats., chap. 113, sec. 22; Moore v. Moore's heirs, 4 Dana, 354; Moggridge v. Thackwell, 7 Ves., Jr., 75; Curling v. Curling, 8 Dana, 38; Garrs v. Wilhite, 2 Dana, 177; Perry on Trusts, sec. 687; 2 Pomeroy's Eq., sec. 1016; 2 Story's Eq., 1169; Chambers v. City of St. Louis, 20 Mo., 543.)

**6.** There is no precatory trust declared in the will of Mrs. Strother. (Knight v. Knight, 3 Beav., 172-3; Vanduyne v. Vanduyne, 14 N. J., Eq., 397; Howard v. Carusi, 109 U. S., 725; Williams v. Williams, 1 Simmons, N. S., 358; Foose v. Whitmore, 82 N. Y., 405; Pennock's Estate, 20 Pa. St., 268; McIntyre v. McIntyre, 123 Pa. St., 329; Knox v. Knox, 59 Wis., 172; Bacon v. Ransom, 139 Mass., 117; Rose v. Porter, 141 Mass., 309; Willitts v. Willitts, 35 Hun., (N. Y.), 401; *In re* Adams 27 Chan. Div., 394; Meredith v. Heneage, 1 Sim., 542; Hay v. Master, 6 Sim., 568; Huskisson v. Bridge, 4 De G. & S., 245.)

Bohon v. Barret, distinguished.

**JUDGE LEWIS** DELIVERED THE OPINION OF THE COURT.

March 4, 1887, Edmund T. Halsey, trustee under the will of Theodocia Strother, also executor, trustee and administrator under the will of Sally Williams Strother, Baroness of Fahnenberg, brought this action in Louisville Law and Equity Court, asking that court to construe the two wills, determining rights of all parties interested; to order settlements of his accounts, as such trustee, executor and administrator, and to immediately direct him whether he should make the contract for erection of a chapel at Spa, Kingdom of Belgium, that was provided for in the will last mentioned.

It is stated in the petition, and amended petition, and also appears that the will of Theodocia Strother was in September, 1893, proved in the probate court of St. Louis, Missouri, where she was at the time of her death, domiciled; and in January, 1886, the will of Sally Williams Strother, Bar-

oness of Fahnenberg, was duly proved in the same probate court, she being, at time of her death, likewise domiciled in St. Louis. It further appears, the last mentioned will was in January, 1886, admitted to probate by the Jefferson County Court, of this State, and plaintiff Halsey was then appointed administrator.

Henrietta Morgan, Richard C. Morgan, Sally Day and Sally Williams Strother were, at commencement of the action, made parties defendants. And May 17, 1888, a judgment was rendered, in substance, as follows: 1. That plaintiff, as trustee under the will of Theodocia Strother, and as administrator of the estate of Sally Williams Strother, Baroness of Fahnenberg, turn over to himself, as trustee under the will of last named testatrix, all property, real and personal, wherever situated, belonging to estate of either testatrix. 2. That he pay all charges payable out of either estate by or to himself as trustee under the will of Sally Williams Strother, or as executor or administrator; and especially pay the sum of $5,000, being annuity then due under said will, to Henrietta Morgan. 3. That he, in execution of provisions of that will, cause to be expended a sum not exceeding $60,000 in purchase of a lot in or near town of Spa, Belgium, and in erection of chapel and vault mentioned therein. 4. That he expend residue of both estates in, or to come to his hands, in building, endowing and establishing the Hunt-Grosch Asylum, indicated in said will. 5. That the action be retained for the purpose of settling plaintiff's accounts, and directing him in performance of his duties under this judgment and under the wills.

April 25, 1889, Henrietta C. Morgan filed her answer, made a counter-claim; and Mamie T. Hunt and others, heirs at law of Thomas H. Hunt, and of Francis K. Hunt, at same time filed their joint petition to be made parties defendants

to the action, which they asked be taken as their answer and counter-claim. In each answer and counter-claim it is, in substance, alleged that the fifth clause of the will of Sally Williams Strother, so far as it purports to make plaintiff Halsey trustee, and vest in him as such any part of the estate of Theodocia Strother, for the purpose of purchasing the lot and erecting thereon the chapel and vault referred to,, or for founding, endowing and establishing the asylum referred to, is void, and defendants are entitled to that estate in virtue of the will of Theodocia Strother.

To each answer and counter-claim plaintiff filed a demurrer for want of jurisdiction, and because facts were not stated sufficient to constitute either a defense or cause of counter-claim. The demurrer was overruled as to first, but sustained upon second ground. And now, we have, on this appeal, questions of proper construction and meaning of the two wills, each of which we deem it necessary to set out in full.

The will of Theodocia Strother is as follows:

"I, Theodocia Strother, now in the city of Paris, France,. do hereby make and ordain this, my last will and testament, hereby revoking all others by me made.

"Item 1. I have a box of plate in the United States of America, and in it is a silver pitcher, presented to my father, in his lifetime, by the Insurance Company of Lexington, Kentucky. I do hereby give and bequeath it to my brother Francis K. Hunt, as a testimony of my affection, and all the residue of said plate, I give and bequeath to my daughter Sally, the Baroness of Fahnenberg, to her and her heirs. forever.

"Item 2. All the rest and residue of my property, of every character and description, real and personal and mixed,. wherever situate, I do hereby devise, give and bequeath to

Morgan, &c v. Halsey, Trustee.

my brother, Francis K. Hunt, to be by him held in trust for the following purposes, viz: For the sole and separate use of my daughter Sally, the Baroness of Fahnenberg, for and during the period of her natural life, with the right on her part to use and control the proceeds or profits as she may think proper, and at her death the whole to belong to her children, should she have any. But in case she should leave no issue, she is hereby invested with the power of disposing of the estate in any manner she may deem proper, by writing in the nature of a last will and testament. Should she die without issue and without having made any disposition of the property, as above provided, it is then my will, and I do hereby direct my trustee to divide it into three equal parts, one of which I do hereby devise, give and bequeath to my sister, Henrietta Morgan, to her and her heirs forever; but in case she should not be then living, the devise and bequest to go to her heirs. Another third part I devise, give and bequeath to my brother, Thomas H. Hunt, and in case he should not be living at the period of the designated contingency, then to his heirs. Another third part I devise, give and bequeath to my brother, Francis K. Hunt, and in contingency herein mentioned shall happen then to his heirs. In making this devise, in the event of my daughter dying without issue and failing to make any disposition of the estate, I have desired in the first place to make her independent and comfortable, and in the next place to leave her a memorial of my wishes, as to its ultimate distribution, unless circumstances should alter, of which she is to be the sole judge, not intending hereby to control her perfect freedom to do with it as she pleases at her death without issue.

"Item 3. I do hereby nominate, constitute and appoint my brother, Francis K. Hunt, executor of this, my last will

and testament, and desire that he may qualify without being required to give security."

The other will is as follows:

"I, Sally Williams Strother, Baroness of Fahnenberg, American citizen, nevertheless temporarily residing in the city of Paris, France, hereby make and ordain this my last will and testament.

"Item First. I give and bequeath to my aunt, Henrietta Morgan, five thousand dollars per annum during the time of her natural life.

"Item Second. I give and bequeath all my jewelry, diamonds and gold ornaments, including those which belong to my mother, to Sally Day, daughter of Thomas D. Day, because of the latter's great affection for my mother and brother.

"Item Third. I give and bequeath all my silverware, pictures, engravings and books to Richard C. Morgan, of Lexington, Kentucky.

"Item Fourth. I give and bequeath all my wearing apparel, silks, laces, shawls, linen, etc., to Sally Williams Strother, of Virginia.

"Item Fifth. All the rest and residue of my property of every character and description, real and personal and mixed, wherever situated, I do hereby devise, give and bequeath to Mr. Edmund T. Halsey, of Louisville, in the State of Kentucky; in trust, nevertheless, for the following purposes, viz: 1st. That he shall expend and supply the sum of $60,000 in the purchase of a lot and building thereon, that is to cause to have built and erected on said plot of ground, in the town of Spa, Belgium, a chapel and vault, paneled and paved with marble, to contain the tombs of my mother, of my brother and my own, and to cause his, her and my remains to be interred therein. Also to invest in first-class

securities, that is, bonds of the United States of America, the sum of $7,000, the interest of which shall be devoted to keeping the said chapel in good order, under the supervision of the pastor of the English church at said town of Spa, and his successors in office.

"2d. That after paying the above mentioned legacies and building and endowing the said chapel in the manner afore-said, he, the said Edmund T. Halsey, shall devote, spend, employ and apply all the rest and residue and remainder of my estate, including all I shall have inherited from my mother and can dispose of by will, according to a certain clause in her testa-ment, in the building, erecting and endowing, founding and establishing an asylum for the good, welfare and benefit of poor, young, white, protestant children of poor, protestant, white men and of poor, old, protestant, white women. Said asylum to be established in the city of Lexington, State of Kentucky, and to be called the "Hunt-Grosch Asylum," in memory of my grandfather and grandmother, whom my mother loved so dearly. The children and old men and old women, for whose special benefit the above asylum is to be founded, shall belong exclusively to the States of Kentucky, New Jersey and Maryland."

By the sixth clause, Edmund T. Halsey was appointed executor.

A preliminary question is raised by counsel of appellee, we will first decide, whether Henrietta Morgan, being then a party before the court, is concluded by the judgment ren-dered May, 17, 1888. It seems to us that can not be treated as a final judgment, and the chancellor, in his opinion, says it was intended to be merely an interlocutory judgment. But whether one or the other, it was premature, and certainly does not conclude the heirs at law of Thomas H. Hunt and

Francis K. Hunt, who were not before the court. For they had the right to contest validity of the fifth clause of the will of Sally Williams Strother, as they are now doing. And if it shall be determined that clause is not valid and effectual, the bequests made by it would be nullities and the powers and duties of Halsey as trustee would end; the result being the estate thereby attempted to be disposed of would go to devisees of the will of Theodocia Strother, including heirs at law of Henrietta Morgan.

In order to render said fifth clause valid, it must appear that Theodocia Strother intended the power of appointment to be not only general, giving her daughter, Sally Williams Strother, liberty to appoint to whom or what object she pleased, irrespective of the devises to her sister and two brothers, but also absolute and unconditional.

As said in Kent's Commentaries, vol. 4, 345: "The intention of the donor of a power is the great principle that governs in the construction of powers; and in furtherance of the object in view the courts will vary the form of executing the power, and, as the case may require, either enlarge a limited or general power or cut down a general power to a particular purpose." And in determining nature and extent of a power the following rule is laid down (see p. 337): "An estate created by execution of a power takes effect in the same manner as if it had been created by the deed which raised the power. The party who takes under the execution of the power takes under the authority and under the grantor of the power, whether it applies to real or personal property, in like manner as if the power, and the instrument executing the power, had been incorporated in one instrument." And in the same manner must be determined, whether a power attempted to be executed by an instrument

Morgan, &c v. Halsey, Trustee.

was actually conferred or intended to be conferred by the other.

It seems to us, looking at what was evidently a well-matured and cherished plan for disposing of her estate, Theodocia Strother never expected or intended it to be wholly diverted from her sister and two brothers, and devised by her daughter for two schemes, one of which serves only to show silly vanity, while feasibility of the other she manifestly did not, nor could, situated as she was, with reasonable certainty count on; indeed, it does not now appear to be at all practicable.

But, independent of the general plan of the will, and manifest affection and desire of the testatrix to provide for her sister and two brothers, it seems to us the language used, properly construed, shows that the exercise of the power of appointment by Sally Williams Strother was intended to depend upon a condition that did not exist at the time she died.

In endeavoring to ascertain the true meaning of the language, it must be kept in mind that it was not a question with the testatrix whether she would invest her daughter with title to the estate; for that she had already given to a trustee, not being apparently willing to intrust her with control of more than the proceeds or profits. It must also be observed that next to making her independent and comfortable while living, the testatrix was solicitous for the estate at death of her daughter to go to her sister and brothers, or their heirs at law, and that the naked power of appointment was regarded a matter of secondary importance.

We need quote only the latter part of the will as follows: "In making this devise in the event of my daughter dying without issue and failing to make any disposition of the es-

Morgan, &c v. Halsey, Trustee.

tate, I have desired in the first place, to make her independ-
ent and comfortable, and, in the next place, to leave her
*a memorial of my wishes as to its ultimate distribu-
tion, unless circumstances should alter*, of which she is to be
the sole judge, not intending hereby to control her perfect
freedom to do with it as she pleases at her death without
issue."

It is apparent to us that the words "to leave to her a
memorial of my wishes as to its ultimate distribution," were
intended to be supplemental to the devise in terms already
made to her sister and two brothers, and to indicate her
wish, such devise should take effect, unless "circumstances
should alter," and that the power of appointment was not
to be exercised, except in that contingency.

What was nature of the "circumstances" in mind of
testator she did not explain.      It is, however, plausibly
argued by counsel that she contemplated possible change in
the relative pecuniary condition of her sister and two
brothers, and the exercise in that case by her daughter of a
special power of appointment.      It is also probable she had
in view another matrimonial venture by her daughter, in
which case a general power of appointment might be persua-
sive with the other party.      But whatever may have been
the particular circumstances in mind of the testatrix, alter-
ation of which was to give to her daughter a power of ap-
pointment, it is not stated in the will of the latter, nor does
it otherwise appear, that there was any alteration or change
of the condition or circumstances surrounding either the de-
visees or Sally Williams Strother; for she continued, up to
her death, independent and comfortable, so far as profits of
the estate could make her so, and also unmarried.

In our opinion exercise of the power of appointment in
question was intended to be conditional, and as the event

upon which it depended did not occur, the fifth clause of the will of Sally Williams Strother is void and ineffectual for any purpose.

Wherefore the judgment is reversed and cause remanded for further proceedings consistent with this opinion.

---

*CASE 108—PETITION ORDINARY—MAY 4, 1893.