CASE 88.—ACTION BY THE WESTERN MANUFACTURING CO. AGAINST COTTON & LONG UPON A WRITTEN CONTRACT.—October 17.

## Western Manufacturing Co. v. Cotton &ıLong

Appeal from Madison Circuit Court.

J. M. BENTON, Circuit Judge.

Judgment for defendants, plaintiff appeals—Affirmed.

1. Contracts—Validity of Assent—Fraud.—A written contract may be impeached for fraud practiced either in its execution or in its obtention.
2. Cancellation of Instruments—Fraud—Sufficiency of Evidence. —Fraud or mistake, to set aside a written contract, must be established by substantial and satisfactory proof.

3. Contracts—Execution—Fraud.—Where a person by ostensibly reading a contract to another obtains his signature to an agreement materially different from the reading, it is a fraud which invalidates the contract.

4. Principal and Agent—Liability to Third Person—Fraud of Agent.—Where a principal accepts an order for goods obtained by an agent, it is bound by the agent's acts in obtaining it, although he violated the principal's instructions.

J. C. & D. M. CHENAULT for appellant.

1. Appellee Cotton admits that he can read and write; without the admission this court would presume him competent to contract and fully protect himself in the absence of proof to the contrary.

2. The only way to avoid the terms of the writing signed is on the grounds of fraud or mistake.

3. As to the question of fraud, it is a well settled principle throughout the country, that to show fraud, one must show that he was deceived in something, concerning which he had no means of knowledge, and that he had a right to rely upon what was told him concerning it.

## AUTHORITIES CITED.

Blanchard v. Moore, 4 J. J. Marshall, 473; Reynolds v. Palmer, 21 Fed. Rep., 433; Parson on Contracts, 9 Ed., vol. 2, p. 491; Trammill v. Ashworth, 99 Va. 646, 39 S. E. 593; Short v. Pierce, 11 Utah, 29; Dalton v. Hood, 34 Pa. State, 365; Cooley on Torts, 588; Rice v. Ward, Ohio Dec.; Spencer v. King, 5 Ohio Dec., 113; Marshall v. Rech, etc., 1 Dana, 611; Moore v. Turbenill, 2 Bibb, 602.

J. TEVIS COBB for appellees.
(No brief in the record.)

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—
Affirming.

Appellant, a manufacturer of jewelry in Minneapolis, Minn., sent its drummer into the country to make sales of its wares to retail merchants. He approached appellees, who were conducting country stores in

Madison county, in this State, and proposed to sell them a bill of the goods. Appellees, being doubtful whether there was a market in their locality for such wares, declined to buy. The negotiations then took the form that the drummer proposed to place its jewelry with appellees for sale, to be paid for only in the event it was sold after a· fair trial. To this proposition appellees assented. A printed form of contract was then filled out by the drummer, and appellees signed it without reading it. Appellee Cotton was the member of the firm with whom the contract ·was made, and· the only member present at the negotiations. He claims that the contract was read to him by the drummer, ostensibly containing their agreement as to the terms of the sale, and that he relied on the drummer's reading of it as to its contents. It turns out that the contract signed was materially different from the reading in that it evidenced an absolute sale of the goods, with the agreement on the part of the purchasers to execute negotiable notes in payment on receipt of the consignment. Appellees refused to accept the goods or to execute the notes. Whereupon appellant brought this suit upon the written contract to recover the contract price. The defense is that the contract was obtained by the fraud of appellant's ˙drummer, and was not, therefore, the act and deed of appellees. The case went to trial upon this issue, resulting in a judgment denying appellant any recovery on the contract.

A written contract may be impeached under the practice in this State for fraud practiced either in its execution or in its obtention. Whether the contract contains the true agreement of the parties, but was induced by the fraudulent misrepresentation of one of them, or whether it fails because of the fraud of

a party to state truly the agreement, such as by surreptitiously substituting a false paper for the true one, or by misreading the contents of the paper, or by force or duress, its execution was procured, the party not in fault, when sued upon it, may plead the fraud as a defense in avoidance of the recovery. Or, as it was stated for the court by Chief Justice Robertson in Tribble v. Oldham, 5 J. J. Marsh., at page 142: "When by fraud or misrepresentation a written memorial of a contract essentially variant from the agreement actually made shall have been imposed on a party, the deed or writing is not his. It is not obligatory. And in such cases the fraud or misrepresentation may be proved, without contradicting the written evidence." But, when it is said that a written contract may be impeached for fraud or mistake, it does not follow that it can or ought to be overturned lightly. The presumption is in favor of the writing. He who attacks it must bear the burden; and the rule is that the fraud or mistake must be established as clearly existing by substantial and satisfactory proof. If the paper itself is plain in its statements, easily understandable, and bears on its face no evidence of the alleged fraud, it operates by law to merge all that was spoken before, leading up to its execution. All that was said then, and which is not incorporated into the document, must be regarded as abandoned or modified by the terms finally written down and signed. Such is the very purpose of written instruments. It is to make certain that which may have been indefinite, or about which a dispute might arise, depending for its settlement upon fickle memories or interested testimony. As the paper speaks for itself, cannot be misunderstood, and forgets not, the law looks with marked favor upon written documents

as evidence, placing them in the highest category. All this would be undone if either party were still at liberty to refute the writing by his own mere word, however trustworthy he may be. No rule could more completely unsettle the law of evidence, built up so painstaking and wisely by generations of jurists and legislators.

Still, the exception to the rule against the impeachment by parol testimony of written contracts, namely, that when procured by fraud, or by mutual mistake of the parties the writing does not embrace the true agreement, the courts will set aside or reform the writing, is as important and as just in every sense as the rule itself. The error is sometimes made of supposing that a mere allegation of fraud or mistake opens the written contract, and its merits will then depend upon the preponderance of the evidence. But it should always be borne in mind that written documents, admittedly signed by the parties entered into in solemn form and with apparent deliberation—for such the writing imports—must stand, unless by strong evidence of a convincing nature the judicial mind is convinced that it was obtained by fraud, or fails because of the mutual mistake of the parties to state the true agreement. With these rules in mind, the next step is to investigate the evidence of the alleged fraud. The written contract in this case is headed in bold type, "Read this," and closes with the statement, "I have read this contract, have had delivered to me by your salesman a copy of same, and this is all of the contract between us." It is argued that these terms give strength to appellant's case, and weaken appellees'. But it must be remembered that appellee Cotton says the contract was not read by him at all, but was ostensibly read to him by appel-

lant's agent. Unless, therefore, the statements mentioned were correctly read to appellee, their presence in the contract would constitute evidence of the attempted fraud, instead of a purpose to call attention to the contents of the instrument. Indeed, all written contracts are supposed to be read over by the parties before signing; and it is the law that the writing is the whole contract.

The quoted clauses do not help appellant's case under all the facts disclosed in the testimony. Appellant's drummer denied having made the sale on the terms claimed by appellees, but says he sold on the terms stated in the writing, and none others were discussed. On this point he is contradicted by appellee Cotton, and by another witness who was present and heard the negotiations; the latter fully sustaining Cotton's story. Then the contract itself is unusual. The manufacturers sell their wares to the retail merchant, who is to execute six notes or accepted bills of exchange, in equal installments, running through a year in payment. Then it is agreed, so the paper runs, if the merchant does not sell the goods within the year, after keeping them fairly exposed for sale in show-cases furnished by the manufacturer, the latter will buy back all the unsold goods at the original cost price. The real difference between these litigants is as to the time of payment. Appellees say no other time was agreed on or discussed than to pay for the goods after they were sold—a consignment to sell on commission. Appellees are corroborated in the testimony of Mr. Cotton by that of the witness Hagan. Hagan did not see the paper signed, but saw the parties as they went to the other end of the store, where pen and ink were kept, to sign it. He, of course, could not then hear what passed between them

at the moment of signing. But neither the drummer nor Cotton claim that any change was made in the terms after they were first discussed, or that any different agreement was reached when they went to sign the contract. In addition, the character of goods sold, the place of appellee's business, and kind of customers he usually had, with the unusual admitted features of the sale, tend in some measure to corroborate appellees' version of the matter. Opposed to all this appellant's salesman stands alone. His bias is probably as great as Cotton's. The paper itself does not support the salesman; for we must remember it is the paper which is being tried—whether it is genuine. If it is genuine, then all this evidence is out of the case for any other purpose, as then the paper speaks for itself and the parties. But in the conflict to overturn the paper it must be stood aside until its authenticity is beyond question. The evidence is fairly convincing that the paper does not contain the true agreement. The inquiry now comes to the effect of appellees' signing the paper without reading it.

It is contended for appellant that a party cannot be deceived as to the truth who shuts his eyes and refuses to look at what is before him plainly visible. If the fact be conceded or established that one party fraudulently misread to the other the paper which was to evidence the contract between them, so as to create the impression that the document as read contained the same matter as was embraced by the understanding and agreement of the parties, his baseness is not offset in law by the mere negligence of the other party, who relied on what he had no reason to doubt. Whether the victim is actually misled is always an essential inquiry, and that the means of

knowledge were open to him, were indeed easily available, and nothing but gross negligence would have failed to discover the falsehood, do not preclude an inquiry into the truth as to whether he in fact had the knowledge, and was in fact misled by the stratagem of his adversary. The law is not designed to protect the vigilant, or tolerably vigilant, alone, although it rather favors them, but is intended as a protection to even the foolishly credulous, as against the machinations of the designedly wicked. The true principle as to means of knowledge is well put by Mr. Pomeroy in his Equity Jurisprudence (volume 2, section 895) thus: "The mere existence of opportunities for examination, or of sources of information, is not sufficient, even though by means of these opportunities and sources, in the absence of any representation at all, a constructive notice to the party would be inferred. The doctrine of constructive notice does not apply when there has been such a representation of fact. If one party—a vendor, for example—claims that the invalidating effects of his misrepresentations are obviated, and that the purchaser was not misled by them, either because they were concerning patent defects in the subject-matter, or because he was from the outset acquainted with the real facts, or because he had made inquiry, and had thereby ascertained the truth, the foregoing qualification plainly applies. It is plainly incumbent on the vendor to prove the alleged knowledge of the purchaser by clear and positive evidence, and not leave it a matter of mere inference or implication. An opportunity or means of obtaining the knowledge is not enough." Or, as it was stated by this court in Trimble v. Ward, 97 Ky. 755, 17 Ky. Law Rep. 508, 31 S. W. 866: "That the representations were of a

character to induce action, and did it, is enough; for it is not just that a man who had deceived another should be permitted to say to him: 'You ought not to have believed or trusted me,' or 'You yourself were guilty of negligence.' '' Also see Pringle v. Samuel, 1 Litt. 43, 13 Am. Dec. 214; Hughes v. Robertson, 1 T. B. Mon. 215, 15 Am. Dec. 104; Morehead v. Eades, 3 Bush, 122; Bright v. Wagle, 3 Dana, 254.

None of these cases, it is true, involved the failure of the deceived party to read the instrument which he was signing. But we believe that fact is of the same kind, and different only in degree from the circumstances in the cases cited. There are many cases, and particularly old ones, in other common-law jurisdictions, where the courts have denied the defense to a party who did not read the paper which he signed. The trend of the courts is, however, toward liberalizing the defense. Fargo Gas, etc., Co. v. Fargo Gas, etc., Co., 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593, and cases cited in Eng. & Am. Encyc. of Law, 122. While there is always a sharp struggle in the courts between the desire to repress fraud upon the one-hand, and to discourage negligence and the opportunity and invitation to commit perjury by laying down the bars upon the other, the question seems to be settling down to hearing all the facts, still scrutinizing closely, and even suspiciously, the claim of a party to such an instrument that he had not read it. The fact is that very thing frequently happens. The rule of law is one of policy. Is it better to encourage negligence in the foolish, or fraud in the deceitful? Either course has most obvious dangers. But judicial experience exemplifies that the former is the least objectionable, and least hampers the administration of pure justice.

In this case it is not disputed in the evidence that appellee Cotton did sign the contract without reading it. His testimony that he did sign it without reading is uncontradicted. It is not material whether the contract was misread to appellee, or whether, contrary to the agreement reached by the parties, it was written differently by appellant's salesman and appellee's signature obtained without his attention being called to the alteration. The act of obtaining his signature to it under either state of case was a fraud upon appellees, and ought not in justice to stand. Appellant is bound alike by what its agent said toward inducing the contract, and his conduct in obtaining it, although in doing so the agent violated the positive instructions of his principal, and acted contrary to its desire. The fruit of the agent's work cannot be accepted by the principal without taking it subject to its infirmities. Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779, 36 Am. St. Rep. 701.

The judgment of the circuit court is affirmed.