ABRAM D. MARX, ET ALS., COMPLAINANTS–APPELLANTS,
v. ALEXANDER S. RICE, INDIVIDUALLY, ETC.,
ET ALS., DEFENDANTS–RESPONDENTS.

Argued January 24, 1949—Decided March 28, 1949.

Mr. *Aaron Marder* argued the cause for the complainants-appellants.

Mr. *John G. Flanigan* filed a brief as attorney for the intervening defendants-counterclaimants, Robert Herzog, Raymond Herzog, Leon Herzog, Nicole Faraggi, Robert Metzger and Marthe Metzger Puder.

Mr. *Herbert J. Hannoch* argued the cause for the defendants-respondents, Alexander S. Rice, individually and as surviving administrator c. t. a. of the estate of Bernard Strauss, and as surviving executor under the will of Florence R. Strauss; Joseph Rice; Helen S. Simpson individually, and as contingent successor trustee under the will of Florence R. Strauss; Alice S. Hannoch; Leah R. Fuld; Florence F. Vogel and Mildred N. Fuld (*Messrs. Hannoch & Lasser,* attorneys).

Mr. *Harold E. Grotta,* substituted sequestrator for Mildred Fuld, defendant-respondent, filed a brief pro se.

Messrs. *Wicoff & Lanning* filed a brief as attorneys for the defendant-respondent, The Broad Street National Bank of Trenton (*Mr. Kenneth H. Lanning* on the brief).

Messrs. *Scammell & Reese* filed a brief as attorneys for the defendant-respondent, The First-Mechanics National Bank of Trenton (*Mr. J. Mitchell Reese* on the brief).

Mr. *William N. Cooper* filed a brief as attorney for the defendant-respondent, Trenton Trust Company.

Mr. *Harvey T. Satterthwaite* filed a brief as attorney for the defendant-respondent, Security National Bank of Trenton.

The opinion of the court was delivered by

ACKERSON, J. We are concerned here with appeals from two orders of the former Court of Chancery striking out successively two causes of action asserted in the amended complaint filed herein by heirs at law and next of kin of Bernard Strauss, deceased.

The first appeal concerns the nature and effect of a power of appointment given in his will to his wife, Florence Rice Strauss. The second involves the effect of a forfeiture clause contained in the will. A collateral question is presented with respect to the propriety of the court's refusal to award counsel fees to the complainants payable out of the estate.

Bernard Strauss died in 1906 leaving a will, which was duly probated, in which he gave one-half of his residuary estate to his wife Florence absolutely, and the remaining half to his only child, Irving Strauss, for his life with remainder to Irving's issue, and in default of issue to Florence in fee, should she survive Irving; otherwise, "to such person or persons as my said wife Florence, shall by her last will and testament appoint, and in case she shall fail to make such appointment," then to Bernard's heirs at law and next of kin. A subsequent paragraph of the will requested the donee of the power to make such donations as she might "deem proper" to such "charitable institutions" in Essex County, New Jersey, as she might select, and then appears the litigious clause, which forms the basis of the first cause of action in the stricken complaint, i. e., "and I do further request her in case she shall exercise the power of appointment by will which I have hereinabove given her, to include among the beneficiaries by her to be designated such of my own blood relations as she may deem worthy to be the recipients of her bounty".

Mrs. Strauss died on January 31, 1918, never having remarried, predeceasing her son, Irving, who died in October of 1947, at the age of 57, without issue. She left a will which was duly probated, in which, after disposing of her own personal estate, she exercised the power of appointment given to her by the will

of her deceased husband. The real and personal property subject to the power was worth about $500,000 in 1918 when she died, and at the time of this litigation was valued around $2,000,000. Mrs. Strauss appointed all of this property to her executors upon certain trusts. Two funds, one of $10,000 and the other of $24,000 were placed in trust for certain selectees from her deceased husband's kindred. The remainder she directed to be sold and the proceeds divided into four equal shares for the benefit exclusively of her own kindred as follows: one share to be held in trust for her sister-in-law, Bertha J. Rice, widow of her deceased brother Jonas, income for life, remainder to testatrix' nephew Joseph Rice; the other three shares in trust, income for life to her brother Alexander S. Rice and sisters Rose R. Siegel and Leah R. Fuld, remainder to the children of said Rose and Leah. The children of Rose are Helen S. Simpson and Alice S. Hannoch, and the children of said Leah are Florence F. Vogel and Abram L. Fuld. All of these persons are made parties defendant herein, including Mildred N. Fuld, wife of Abram Fuld, Harold E. Grotta, substituted sequestrator for Mildred Fuld, and many judgment creditors of Abram L. Fuld.

The complaint herein was filed by those of Bernard's own kindred who were not benefited by the aforesaid appointments. In the first cause of action they seek the construction of his will to the end that the exercise of the power of appointment by Mrs. Strauss be decreed to be contrary to the true meaning of the will and therefore null and void; that an accounting be taken and the estates thus attempted to be appointed be decreed to be vested solely in Bernard's own kindred. The second cause of action seeks a decree vesting in complainants the estates appointed to Florence's own kindred on the ground that certain alleged conduct by them was an attempted "avoidance" of her will and therefore subject to the forfeiture or no-contest clause contained therein.

On separate motions by the defendants each of the aforesaid causes of action was stricken as not disclosing cause for equitable intervention, hence these appeals.

In support of their first appeal the complainants insist that under the terms of Bernard's will, and the pleaded circumstances, the power of appointment by his wife was restricted solely to his own heirs at law and next of kin (or his blood relations) other than his wife and son.

A power is said to be general when it is exercisable in favor of any person the donee may select, and special, limited or particular when it is exercisable only in favor of persons or a class of persons designated or described in the instrument creating the power. *Brown v. Fidelity Union Trust Co.*, 126 *N. J. Eq.* 406, 422 *(Ch.* 1939*); The Pennsylvania Co., etc., Annuities v. Kelly,* 134 *Id.* 120, 131 *(Prerog.* 1943*);* 41 *Am. Jur. (Powers)* § 4, *p.* 808. In the construction of a testamentary power, like other parts of the will, the intention of the donor always governs. *U. S. Trust Co. v. Montclair Trust Co.,* 133 *N. J. Eq.* 579, 583 *(Ch.* 1943*).*

The complainants' theory is that under Bernard's will what would otherwise be a general power must be cut down to a special or limited one for the sole benefit of his heirs at law and next of kin because of the gift over to them in the event of no appointment. They rely upon the old English case of *Bristow v. Warde,* 2 *Vesey Jr.* 336, 21 *E. R. C.* 356 *(1794),* and some early American cases, primarily *Morgan v. Halsey,* 97 *Ky.* 789, 31 *S. W.* 866 *(1895),* 36 *L. R. A.* 716, to support this view. In *Bristow v. Warde,* by marriage articles, funds of each party were agreed to be settled on the husband and wife for their joint lives, and then as the husband might appoint, and in default of appointment to the children of the marriage. Lord Chancellor Loughborough held that the children were the primary objects of the marriage articles, saying "particularly here where equal sums were brought in by both parties to be settled for the family", the husband did not have an indefinite power to appoint, and his creditors could not attach the fund as in the case of a general power.

However in later cases the same English and American courts refused to follow their earlier holdings, and characterized them

as establishing no general principle and turning on their own particular facts. *Vide Minton v. Kirkwood, L. R. 3 Ch.* 614, 21 *E. R. C.* 371; *St. Matthews Bank v. De Charette,* 259 *Ky.* 802, 83 *S. W. (2d)* 471, 99 *A. L. R.* 1146 (1935).

We consider it well settled today that a gift over to a person or persons who are to take in the event that a general power of appointment is not exercised by the donee, does not of itself operate to cut down or restrict the extent of the power. There must be in addition a clear intent, express or implied, that the donor meant to give only a special or limited power. *Thompson v. Garwood,* 3 *Whart.* 287, 31 *Am. Dec.* 502 *(Pa.* 1837); 41 *Am. Jur. (Powers)* § 55, 846; *Hood v. Francis,* 137 *N. J. Eq.* 200, 204 *(Ch.* 1945); *Brown v. Fidelity Union Trust Co., supra,* at page 422; *Grace v. Perry,* 197 *Mo.* 550, 95 *S. W.* 875 (1906). We find no such intent in the will before us.

Referring to the "request" to the donee of the power "to include among the beneficiaries by her to be designated such of my blood relations as she may deem worthy to be the recipients of her bounty", the complainants contend that this provision is mandatory and converted what would otherwise be a general power into a power in trust for the collateral line of Bernard Strauss, thereby prohibiting the donee, his wife, from designating any beneficiaries who are not in that category. We do not so interpret the will, for such construction would do violence to language which is free from doubt. The will shows evidence of having been prepared by an experienced draftsman, and it is to be presumed that the language used was chosen carefully to express a definite testamentary purpose, and if that now contended for by the complainants had been intended, such purpose would have been expressed in appropriate terms.

The word "request" was not used here in a mandatory sense. It may be used as a command or an entreaty depending upon the context in which the word is inserted, and the circumstances attendant upon its use. However, the real test is whether or not the testator intends, by his language, to control the

disposition of his property. 1 *Page on Wills*, § 91, *p*. 199. We conclude that here it was not so intended.

And the use of the word "include" with respect to beneficiaries of the power in the foregoing excerpt from the will makes clear a purpose not to confine the class to testator's blood relations, and we note also that the donee was vested with discretion to determine which of the testator's blood relations were worthy of *her* bounty.

█ We are satisfied that Bernard Strauss gave his wife an express general power of appointment which was not limited or cut down to the class designated to take in default of its exercise. By appointing several of the donor's collateral line, the donee carried into effect her husband's request, which she may have considered herself morally obliged to do, but concerning which there was no legal compulsion. Therefore there is neither a trust nor an obligation in the nature of a trust for the benefit of the donor's collateral line, because the power, being general, is not coupled with a duty, *Brown v. Fidelity Union Trust Co., supra, page* 424, and the gift over to the testator's heirs and next of kin is further indication that a precatory trust was not intended for any one. *Restatement (Trusts)*, § 27(d), *p*. 91; 54 *Am. Jur. (Trusts)*, §§ 56, 57, *pp*. 65, 66.

██ Complainants further contend that assuming the power to be general, nevertheless, the exercise thereof was invalid because the property subject thereto was placed in trust for the purposes of the appointment. On the contrary, it is settled here, and generally elsewhere, that, unless the donor manifests a contrary intent, the donee of a general power of appointment may make appointments in trust. *Vide Guild v. Mayor, etc., of Newark*, 87 *N. J. Eq.* 38, 41, 43 *(Ch.* 1916*); Hood v. Francis, supra, p.* 204*; Brown v. Fidelity Union Trust Co., supra, p.* 424*; Wilmington Trust Co. v. Sloane*, —— *Del.* ——, 54 *Atl.* (2d) 544, 551 (1947); 1 *Scott on Trusts*, § 21, *p*. 144*;* 41 *Am. Jur. (Powers)*, §§ 61, 62, *pp*. 851–852. We perceive no manifestation of a contrary intent in the will presently before us. By the same token, the donee of a general power may make appointments

with conditions and charges attached provided they are lawful in themselves. *Restatement (Property), Vol.* 3, § 356*(c), p.* 1973. Therefore the no-contest or forfeiture clause in the donee's will does not invalidate the appointments which she made, since the type of forfeiture clause therein contained and presently to be considered, is entirely valid in this state. *Hoit v. Hoit,* 42 *N. J. Eq.* 388 *(E. & A.* 1886*); Provident Trust Co. of Phila. v. Osborne,* 133 *Id.* 518, 520 *(Ch.* 1943*); O'Donnell v. Jackson,* 102 *Id.* 470, 474 *(Ch.* 1928*).*

Our attention is further directed to an allegation in the bill of complaint to the effect that it was "understood and agreed" between the testator, Bernard Strauss, and his wife that she would exercise the power of appointment given to her by his will only for the benefit of his heirs at law and next of kin. Complainants say that the appointments made by Florence's will are void because this alleged agreement converted what would have been a general power into a special one for the exclusive benefit of Bernard's kin. They concede, however, that they are relying on an alleged oral agreement, and their position is therefore untenable since such an agreement, being testamentary in character, is void because not executed and published in the manner prescribed by the statute of wills. *Cleveland v. Havens,* 13 *N. J. Eq.* 101, 104 *(Ch.* 1806*); Griscom v. Evens,* 40 *N. J. L.* 402, 406 *(1878),* aff'd 42 *Id.* 579 *(E. & A.* 1880*); Murray v. Lewis,* 94 *N. J. Eq.* 681 *(Ch.* 1923*); Farnum v. Pennsylvania Co. for Ins., etc.,* 87 *Id.* 108, 114 *(Ch.* 1916*),* aff'd, *Ibid, p.* 652 *(E. & A.* 1917*).*

Complainants also contend that the first cause of action should not have been stricken on motion but held for final hearing. However, under the circumstances here presented, we conclude that this contention is without merit.

We come now to consider the second cause of action in which the complainants attempted to invoke against the defendants the forfeiture clause in Florence Strauss' will, although the subject-matter of the suit is part of the estate of her deceased husband.

As hereinbefore stated, Bernard Strauss gave one-half of his residuary estate to his son, Irving, for life, remainder to such persons as the testator's wife, Florence, should by her will appoint, and in default of appointment, to testator's heirs and next of kin. It is this remainder in one-half of Bernard's residuary estate that is here involved. Florence died in 1918, while Irving, an invalid and practically helpless since birth, survived until 1947, when he died without issue. Mrs. Strauss exercised the power of appointment given to her by her husband's will in favor of her executors upon certain trusts, which, of course, did not become operative until the termination of Irving's life estate. The residue of Florence's own estate she gave to her executors in trust to pay $500 annually to her son's nurse:

" * * *; and to apply the balance of the income thereof or so much of said balance as may be necessary or desirable and also the corpus of said trust fund or so much of said corpus as may be necessary or desirable to the care, maintenance and support of my said son for * * * his natural life; and * * * I do so direct * * * that my said son should be maintained in manner and style compatible with the extent of my estate, always mindful that the prime consideration in his maintenance and support is what may tend to his happiness, health and well being and that to the fulfillment of this end not only the income but also the corpus of the estate shall be devoted."

The will then provides for the disposal of the remainder of the estate after Irving's death as hereinbefore noted, and then the twelfth paragraph provides as follows:

"Any person who may benefit by the provisions of this my last will, whether it be by the disposition of my own estate or in the exercise of the power of appointment by will given to me by my husband's last will, who, in any manner either directly or indirectly shall institute, encourage or participate in any proceedings. * * * having for its object the avoidance of this my last will or any provision therein contained shall thereby forfeit and forego any and all benefits accruing to him under this will and shall forever become disqualified from receiving any benefits * * * out of my own estate or out of the estate of my deceased husband under the power of appointment vested in me."

The complainants allege that certain beneficiaries of Mrs. Strauss' will, who were also benefited by her exercise of the power of appointment in her husband's will, attempted to defeat her gift to her son and thereby forfeited their appointments, hence the part of Bernard's estate not effectually appointed should go to his own heirs and next of kin.

It appears that on December 21, 1925, the executors and trustees of Florence Strauss' will filed an account in the Orphans' Court praying allowance for $142,495 ($95,000 of which was from corpus) taken wholly from her estate for Irving's support and care. There was a difference of opinion between the fiduciaries and uncertainty on the part of the beneficiaries as to whether Florence's estate was to be the primary or secondary source of payment. In other words should the fiduciaries in following the direction of her will to pay Irving "so much * * * as may be necessary or desirable" for his support, take into consideration the income received from his father's estate, or pay the total amount from his mother's estate, thus enabling him to accumulate the whole income from the former estate?

Exceptions were filed to the account by some of Florence's beneficiaries to resolve this question, but these exceptions were voluntarily withdrawn, and a bill in Chancery was then filed for interpretation of the will in this respect, which was not pressed. Thereafter two other bills were filed, one by Florence's fiduciaries and one by a group of her beneficiaries, pertaining to the aforementioned question, and seeking construction of the will and direction with regard thereto. The latter two suits were consolidated and some of Bernard Strauss' kindred were admitted as parties defendant and filed answers. The consolidated suits were heard by a Vice Chancellor who, after concluding that Bernard's kindred had no interest in Florence's estate, advised a final decree, with the consent of Irving and all of the remaindermen under Florence's will, except one, who was absent, but whose rights were protected by proper indem-

nity. A full copy of the record in the consolidated suits is before us by way of supplementing the present bill of complaint.

By this decree Florence Strauss' fiduciaries were directed to apply $25,000 annually out of the income from her estate, if such income is sufficient therefor, and, if not, then, to the extent of such deficiency, out of the corpus, for the support of Irving; and out of any excess of such income over $25,000, one-half of such excess to be held and accumulated for Irving during his life, and the other half to be distributed currently among the persons who would be entitled to receive the income for life on Irving's death. An appeal was taken from this decree by some of Bernard's kindred and $25,000 was paid to them by some of Florence's kin for an agreement to abandon the appeal.

A judicial proceeding instituted to obtain an interpretation of a will has for its object the fulfillment of the testator's intention and not the avoidance of it. *Shelley v. Creighton,* 140 *N. J. Eq.* 603, 610 *(Ch.* 1947*); Moskowitz v. Federman,* 72 *Ohio App.* 149, 51 *N. E. (2d)* 48, 56 *(1943);* 3 *Page on Wills,* § 1306, *p.* 822*; Griffin v. Sturges,* 131 *Conn.* 471, 40 *Atl. (2d)* 758, 156 *A. L. R.* 972 *(1944).* In such a proceeding the beneficiary is seeking merely to ascertain and protect his own gift and is not endeavoring to circumvent the will of the testator. *Restatement (Property), Vol.* 4, § 429, *p.* 2512, *comment (c).* A forfeiture clause in a will is to be strictly construed against a forfeiture and reasonably construed in favor of the beneficiary. *Girard Trust Co. v. Schmitz,* 129 *N. J. Eq.* 444, 450 *(Ch.* 1941*).*

Here the question in dispute was difficult and conditions had arisen which required interpretation of the will and directions with respect to its administration. The combined estates and the income therefrom had increased tremendously between the time of testatrix' death and the rendition of the consent decree. The recitals therein state that in the five years preceding its date, the lowest yearly income received by Irving from his

father's estate was $21,000, and under normal conditions not less than $37,000 was anticipated. The addition of $25,000 from his mother's estate gave him an expected total income of more than $60,000, or if the lowest year be taken, $46,000. The total yearly expenditures for his care during that period averaged $30,000, and had not risen above $35,000. Thus the decree assured him of a yearly income of $15,000 to $30,000 more, if the income from his father's estate be taken into account, than appeared "necessary or desirable" for his requirements, and he was left free, under the decree, of applying for an increase from the income of his mother's estate if conditions changed, and additionally the corpus of her estate, available for his use under the will should the income decrease, was very large.

Thus the recitals in the decree and the allegations of the present bill of complaint clearly show that the income available to Irving from his father's and mother's estate was far in excess of any of his possible needs and he consented that a portion of the income from his mother's estate be advanced to the life beneficiaries who would succeed to the income at his death, and in this consent he was joined by the remaindermen. Irving was primarily interested in this income and he was sharing the surplus not needed by him with those who would take life estates after him and were then in great need. This was done with the approval of the court.

We agree with the court below in saying that "This was not an 'avoidance of this my last will or any provision therein contained' within the meaning of the Twelfth paragraph of the will. The forfeiture clause relates to a hostile proceeding, not to a gift. * * * Mrs. Strauss directed that a forfeiture should result only from some matter 'having for its object the avoidance of this my last will or any provision thereof'. She did not intend to prevent a fair compromise of divergent interpretations of the will, especially a settlement approved by the court." And by the same token the payment to some of Bernard's kindred to abandon an appeal from the consent de-

cree, under the circumstances hereinabove related, did not work a forfeiture.

Finally complainants contend that they should have been allowed a counsel fee payable out of Bernard Strauss' estate. Ordinarily an unsuccessful complainant in a suit in Chancery for the construction of a will is not allowed counsel fees. *West v. St. James' Episcopal Church*, 83 *N. J. Eq.* 324 *(E. & A.* 1914). However such an allowance is discretionary, *R. S.* 2:29–129, 131, 132; *Grunstra v. New-Ark Petroleum Corp.*, 111 *N. J. Eq.* 451, 452 *(E. & A.* 1932), and on review the exercise of such discretion will not be disturbed unless it was abused. *Barr v. Belmar*, 118 *N. J. Eq.* 279 *(E. & A.* 1935). We find no such abuse in the instant case.

The orders appealed from are affirmed.

*For affirmance:* Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—5.

*For reversal:* None.